**F.D.I.C., Plaintiff,**

**v.**

**William W. BURRELL, Carl G. Riggs, John T. Brown, John J. Ellis, William C. Miller, Ted H. Smith, and Curtis P. Riggs, Defendants.**

**William W. BURRELL, Carl G. Riggs, and Curtis P. Riggs, Third-party Plaintiffs,**

**v.**

**FIRST TAYLOR COUNTY BANCORPORATION, INC., Richard D. Gillen, and Douglas M. Katz, Third-party Defendants.**

**Civ. No. 86–357–E.**

United States District Court, S.D. Iowa, Central Division.

July 17, 1991.

Timothy J. Walker, Robert K. Johnson, Megan M. Antenucci, Whitfield, Musgrave & Eddy, Des Moines, Iowa, for plaintiff F.D.I.C.

Ronald L. Anderson, Richard J. Howes, Howes & Anderson, Des Moines, Iowa, for defendants William W. Burrell, Carl G. Riggs, John J. Ellis and Curtis P. Riggs.

Sanford A. Turner, Turner, Jones, Bitting & O'Meara, Clarinda, Iowa, for defendant John T. Brown.

Defendant William C. Miller dismissed from case.

First Taylor County Bancorporation, Inc., Richard D. Gillen and Douglas M. Katz, pro se.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

Defendant's motion for judgment notwithstanding the verdict (jnov) or in the alternative, a new trial, and plaintiff's motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), plaintiff's and defendants' motion to review the Clerk's taxation of costs bring this matter before the court. After careful consideration of the written and oral argument the court denies, defendant's motion for jnov or a new trial, plaintiff's motion to amend the judgment, plaintiff's motion to review taxation of costs and grants defendants' motion to review the taxation of costs.

## FACTS

This action is brought by the Federal Deposit Insurance Corporation (FDIC) in its corporate capacity, against the former officers and directors of the defunct Bedford National Bank (Bank), of Bedford, Iowa for breach of their fiduciary duties, breach of contract and negligence in the handling of 17 loan files.

This matter was tried to a jury in November and early December 1990. The jury returned a verdict in favor of plaintiff in the amount of $1,690,992.06 against defendants William Burrell, Carl Riggs, John Ellis, $1,481,072.20 against Curtis Riggs,

and $201,262.03 against John Brown. On the cross claim by the above listed defendants against Douglas Kratz, Richard Gillen, and First Taylor County Bancorporation the jury found for the third-party defendants and awarded nothing on the cross claim.

## DISCUSSION

### I. JNOV

Judgment notwithstanding the verdict:

■ The test for evaluating a motion for j.n.o.v. is as follows:

> Both the trial court and this court must (a) consider the evidence in the light most favorable to the prevailing party, (b) assume that the jury resolved all conflicts of evidence in favor of that party, (c) assume as true all facts which that party's evidence tended to prove, (d) give that party the benefit of all favorable inferences which may reasonably be drawn from proved facts, and (e) deny the motion if in light of the above reasonable jurors could differ as to the conclusions that could be drawn from the evidence.

*McGee v. South Pemiscot School Dist. R-V*, 712 F.2d 339, 343 (8th Cir.1983) (citations omitted).

Defendants argue that they were entitled to a directed verdict at the end of the plaintiff's case or at the close of all evidence, and now reasserts the same issues in support of their motion for a judgment notwithstanding the verdict, or a new trial:

1. statute of limitations;

2. damages should not be allowed on advancements made by others after defendants left the bank;

3. submission of interest was not appropriate;

4. loan lines charged off before the FDIC took over the bank should not have been submitted to the jury;

5. there was no evidence to support the contract claim—no knowing, intentional or willful violations;

6. the FDIC did not succeed to the claims of the previous owners;

7. the loan files were altered after defendants left the bank;

8. there was a complete failure of proof of gross negligence which is required to hold defendants liable.

This is indeed a shotgun approach. These matters were given careful consideration during the trial. The court will specifically address points 3 and 8. All other points of alleged error are denied on the same grounds as announced by the court during the trial.

## INTEREST

■ Defendants argue that the claims of the FDIC were unliquidated until the jury returned its verdict on December 18, 1990. The amount of damages which the jury found was only one-third of the amount sought by the FDIC. Therefore, the damages did not become liquidated or due until the jury returned its verdict and the Court entered judgment. Defendants further argue that Iowa follows the general rule that interest runs from the time money becomes due and payable. In the case of unliquidated claims, this is ordinarily the date of judgment. In support of their position defendants cite to the court the case of *Midwest Management Corp. v. Stephens*, 353 N.W.2d 76 (Iowa 1984). In *Midwest* the court stated:

> Generally, interest runs from the time money becomes due and payable, and in the case of unliquidated claims this is the date they become liquidated, ordinarily the date of judgment.... One exception to this rule is recognized in cases in which the entire damage for which recovery is demanded was complete at a definite time before the action was begun.

In resistance FDIC argues that the general rule is that directors and officers are liable for the interest chargeable against them for losses arising out of their negligent acts.

> Generally, the measure of damages recoverable in an action against a director or officer of a bank upon a cause of action arising from a breach of duty as such director or officer is, in the absence

of statutory modification, the full compensation of the plaintiff for the injuries complained of.... The entire sum loaned, plus the interest and less salvage, should be treated as the damage sustained.

10 Am.Jur.2d, Banks § 217 (1963).

In support of their position FDIC cites to the court the case of *FSLIC v. Geisen,* 392 F.2d 900 (7th Cir.1968), where the court found that prejudgment interest is recoverable if it arises from either a contractual agreement or is authorized by statute. *Geisen,* involved an action against officers and directors seeking to impose personal liability for improper loans. The court further stated:

All damage in the context in which such phrase is here employed—necessarily embraces loss of interest as well as loss of principal. The two are so related that intent to include one but exclude the other cannot be presumed.

*Geisen,* at 906.

The court finds that the submission of the claim plus the contract rate of interest did not make the amount claimed unliquidated.

## STANDARD OF NEGLIGENCE

Defendants argue that there was a complete failure of proof of gross negligence which is required to hold defendants liable. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), codified at 12 U.S.C. § 1821(k) requires the FDIC to prove gross negligence on the part of former bank officers or directors to recover money damages from them. § 1821(k) states:

(k) Liability of directors and officers.

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation—

(1) acting as conservator or receiver of such institution,

(2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or

(3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title, for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

Two courts have had the opportunity to construe this statute in recent decisions. The holdings in both cases indicate a trend toward applying the gross negligence standard to all actions in which FDIC brings claims against bank officers. *Gaff v. FDIC,* 919 F.2d 384 (6th Cir.1990). *FDIC v. Canfield,* 763 F.Supp. 533 (D.Utah 1991), a magistrates report and recommendation out of Utah.[1]

In response FDIC argues that simple negligence, under Iowa law, is the proper standard in this matter, as opposed to requiring a showing of gross negligence, since FIRREA is not applicable.

The general rule is that an act of Congress takes effect on the date it is signed into law by the President. *FDIC v. Howse,* 736 F.Supp. 1437, 1446 (S.D.Tex. 1990). Statutes affecting substantive rights are generally given prospective application, however because retroactive application would result in manifest injustice to the parties. *Howse,* at 1446.

---

**1.** The District Court adopted the Magistrate Judge's Report and Recommendation on April 25, 1991.

■ FIRREA was signed into law on August 9, 1989, long after the present case had been on file. FIRREA itself contains no provisions which set forth an effective date for the act as a whole, and no specific effective date for § 1821(k). It is clear that retroactive application of a new statute to pending cases is far from automatic, and is a determination that must be made by the court in light of the substantial impact on a party's rights and a possibility of manifest injustice. *Bradley v. School Board of Richmond*, 416 U.S. 696, 711–22, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974).

■ The *Bradley* court set out a three-part test to determine whether manifest injustice would result by the retroactive application of new legislation to pending cases. *Id.* at 717, 94 S.Ct. at 2019. The items to be considered are:

a. The nature and identity of the parties,

b. The nature of their rights, and

c. The nature of the impact of the change in law upon those rights.

FDIC further argues that the nature and identity of the parties plays a large part in the determination of the case at hand. This case like many other lawsuits around the county involve directors and officers liability to failed financial institutions. To require the retroactive application of FIRREA would vastly increase the cost of litigation which must be passed on to the insured of FDIC.

FDIC asserts that the nature of their rights, the second part of this test, favors FDIC in that to alter the standard of negligence long after the cause of action had arisen and the trial was at least half over would certainly result in manifest injustice to the right of the FDIC to seek to replenish the insurance fund.[2]

The third prong concerns the nature of the impact of the change in law upon the rights of the parties. In this case defendants never raised or plead the applicability of FIRREA to this action.

■ Even if FIRREA is determined to be applicable to this action the assertion of gross negligence standard is misplaced. First, the last sentence of § 1821(k) states that "Nothing in this paragraph shall impair or affect any right of the corporation under other applicable law." Therefore, Iowa common law (simple negligence) should be applied. Second, Congress set out ten reasons for the enactment of FIRREA, two of which are:

5. to put the Federal deposit insurance funds on a sound footing.

10. to strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors.

To urge that FIRREA raises the standard of negligence required is inconsistent with Congressional intent.

The court finds that FIRREA is not applicable to this case as it became law a full three years after this action was brought. In addition FIRREA was not plead by defendants or the possibility of its applicability even mentioned to the court until the second week of trial in this matter. Therefore, jnov is not warranted on this ground.

## II. NEW TRIAL

Federal Rule of Civil Procedure 59 provides that:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

■ This court in reviewing a motion for new trial, is not required to view the evidence in the light most favorable to the non-movant; rather, it may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict. *Quachita National Bank v. Tosco Corp.*, 686 F.2d 1291 (8th Cir.1982). The authority to grant a new trial ... is confined almost entirely

---

**2.** Defendants first attempted to plead FIRREA three years after this case was filed and after

one full week of testimony had been given at trial.

to the exercise of discretion on the part of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). A trial court must determine whether the alleged error affected the substantial rights of any party sufficient to warrant a new trial. *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir.1990).

Defendants ask for a new trial on the following grounds:

1. The verdict is not sustained by sufficient evidence.

2. The court erred in excluding proper evidence offered by the defendants, to wit:

    a. the FDIC's loss of loan files;

    b. the FDIC's failure to properly mitigate damages, and;

    c. the FDIC's admission that its claims were only worth $1,000,000. (i.e. defendants' exhibit D–76).

3. The jury was informed that there was insurance coverage for the various claims.

4. The court erred in refusing each of the instructions requested by the defendants.[3]

5. The court erred in instructing the jury over defendants' objections.[4]

6. The court erred in allowing plaintiff's experts to change their opinions on the eve of trial.

7. The court erred in allowing plaintiff's expert witnesses to use legal terminology in their testimony.

8. The verdict was excessive.

9. The verdict is the result of passion and prejudice on the part of the jury.

10. On the whole record did not have a fair trial.

Of the points raised by defendants in support of their motion for new trial points 1, 8, 9, and 10 are raised for the first time.

■■■ The court after review of its notes from the trial finds that defendants' contention that insurance was mentioned at

trial is without merit. Prior to trial defendants filed a motion in limine to exclude any evidence of insurance coverage for officers and directors mismanagement. That motion was not resisted and was sustained. It is the court's recollection that during the reading of James Hutchson's deposition in the plaintiff's case in chief, the following questions and answer were read from page 125:

Q: I think that's from what they call the Scarborough insurance file. Are you familiar with that at all?

A: Must be the people insuring banks.

Q: I think Gillen and Kratz filed a claim with Scarborough and it was prepared by the lawyers in connection with that claim. Did you know anything about that?

The court fails to see where any mention of "officers and directors liability insurance" was interjected into this trial in the above questions and answer. The above answer dealt with insurance for the bank not the officers and directors. It is also the court's recollection that the court offered to admonish the jury to disregard any mention of insurance. That offer was turned down by defendants counsel. The court finds that defendants were not prejudice by the above listed mention of "insurance" and as such a new trial of this point is unwarranted.

■■■ Point number 1 that the verdict is not sustained by sufficient evidence is also found to be without merit. This court after a review of its notes and reflection on the evidence presented during this two week trial, finds that sufficient evidence was presented during the trial to support the verdict.

Points 8 and 9, excessive verdict, and result of passion and prejudice are also without merit. FDIC presented evidence on the following credit lines:

---

3. Defendant's proposed instructions ## 9, 10, 17, 22, 23, 24, 25, 26, 27, 28, 31, 38, 40, 41, 42, 45, 46, 47, 48, 49, 50, 51, 52, 57. Clerk's memorandum of papers # 193.

4. Defendants object to the following Instructions given by the court: Nos. 3, 8, 9, 10, 12A, 13, 15, 17, 18, 19, 20, 21, 22, 23, 24, 28, 29, 31, 32, 33, 35A, and 37.

| Credit line | Amount of Principal Claimed as Damages Excluding Interest | Jury Determination of Damages |
|---|---|---|
| Clifford Baldwin | $251,577.54 | $201,262.03 |
| James Brooks | 126,116.67 | 99,339.06 |
| Brown Farms | 281,243.14 | 220,968.27 |
| Steve Brown | 30,000.00 | 0 |
| Choke Farms | 141,506.12 | 0 |
| Larry Eighmy | 112,216.67 | 89,773.34 |
| Eldon Erickson | 308,445.85 | 235,865.00 |
| Donald Lyons | 58,858.47 | 43,084.76 |
| Richard Nicholson | 199,442.27 | 0 |
| Keith O'Dell d/b/a Circle Bin Sales | 257,373.90 | 216,316.80 |
| Alan Peach | 173,441.39 | 138,124.59 |
| A.B. Pershing | 234,771.98 | 0 |
| Curt Schmielau | 103,819.42 | 83,055.54 |
| Garry Stamps | 192,854.70 | 86,310.52 |
| Larry Stamps | 265,518.16 | 188,067.15 |
| Tower Feed & Grain | 93,500.00 | 88,825.00 |
| Merle Travis | 210,152.78 | 0 |

As can be seen from the above listed columns the jury in each line of credit returned a verdict less than the amount sought by the FDIC as such this verdict can not be excessive or the result of passion and prejudice.

Point number 10, on the record as a whole defendants did not receive a fair trial is found to be without merit.

## III. PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT.

■ FDIC argues that following the trial its counsel contacted members of the jury and discovered that the jury did not award any interest on the damages found on the lines of credit listed above.

The court finds that under *Karl v. Burlington Northern R.R.*, 880 F.2d 68, 73 (8th Cir.1989), any information gained from a juror following a trial can not be used in the manner plaintiffs propose its use. Accordingly, the motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) is denied.

## IV. MOTIONS TO REVIEW CLERK'S TAXATION OF COSTS.

On April 11, 1991 the Clerk of Court entered an order taxing costs in favor of plaintiff in the amount of $3,545.34. Both parties filed motions to review the order.

■ Defendants argue that the Clerk awarded witness fees for Don Lyons, Richard Nicholson and Zada Burrell even though they did not testify at trial. In his order, the Clerk awarded witness fees on the basis that the courtroom deputy listed in the minutes that these persons testified at trial. A review of the witness list prepared by the courtroom deputy from this trial indicates that these persons did not testify at trial, and therefore a reduction of the witness fee award is appropriate. Accordingly, $204.40 will be deducted from the taxation of costs.

Plaintiff's motion to review the taxation of costs is denied as plaintiff's fail to allege any specific items in which they claim the Clerk erred.

THEREFORE IT IS ORDERED that defendants' motion for judgment notwithstanding the verdict and motion for new trial are denied.

IT IS FURTHER ORDERED that plaintiff's motion to alter or amend the judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion to review Clerk's taxation of costs is denied.

IT IS FURTHER ORDERED that defendants' motion to review Clerk's taxation of costs is granted and the cost awarded to plaintiff is reduced by $204.40.