957 F.2d 786
 60 USLW 2545
 FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,
v.
Charles R. CANFIELD, Benjamin F. Armstrong, Theodore May,
Newell P. Parkin, Mac Christensen, Richard A. Christenson,
Dale R. Curtis, Frank Diston, Robert Garff, Lee K. Irvine,
Ellis Ivory, Arch Madsen, Gus Paulos, Aline Skaggs, Ronald
Swenson, Harold W. Milner, Ernest Wilkinson, Defendants-Appellees.
 No. 91-4143.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 24, 1992.
Order Granting Suggestion for
Rehearing En Banc
April 22, 1992.
 
 Edward J. O'Meara, Counsel, of FDIC, Washington D.C. (Ann S. Duross, Asst. Gen. Counsel, Richard J. Osterman, Jr., Senior Counsel, and Jeffrey Ross Williams, Senior Atty., of FDIC, Washington, D.C., and Warren Patten and Craig T. Jacobsen of Fabian & Clendenin, Salt Lake City, Utah, of counsel, with him on the brief), for plaintiff-appellant FDIC.
 Robert S. Campbell, Jr. (Joann Shields of Campbell Maack & Sessions, Blake S. Atkin of Parry, Murray & Cannon, James R. Holbrook and Lynda Cook of Callister, Duncan & Nebeker, Michael N. Zundel of Jardine, Linebaugh, Brown & Dunn, Dale J. Lambert of Christensen Jensen & Powell, George J. Romney of Romney & Condie, and John W. Lowe, Salt Lake City, Utah, with him on the brief), for defendants-appellees.
 Before HOLLOWAY, LOGAN and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 This case presents a question of statutory construction. The Federal Deposit Insurance Corporation (FDIC), in its corporate capacity, brought this action against the officers and directors of the failed Tracy Collins Bank & Trust Company seeking to hold them liable for their allegedly negligent management of the institution. The district court granted defendants' motion to dismiss, holding that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(k) (Supp. I 1989), barred the FDIC from seeking damages from directors and officers of failed institutions for simple negligence. FDIC v. Canfield, 763 F.Supp. 533 (D.Utah 1991). Because we conclude that this holding runs contrary to the plain language of section 1821(k), we reverse.
 
 
 2
 "As in any case of statutory interpretation, we begin with the plain language of the law." United States v. Morgan, 922 F.2d 1495, 1496 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991). " 'Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (citation omitted). We review the construction of federal statutes de novo. United States v. Temple, 918 F.2d 134, 134 (10th Cir.1990).
 
 I.
 
 3
 The central question in this appeal is whether section 1821(k) establishes a national standard of liability for officers and directors in actions brought by the FDIC. The statute provides:
 
 
 4
 "A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation--
 
 
 5
 (1) acting as conservator or receiver of such institution,
 
 
 6
 (2) acting based upon a suit, claim or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or
 
 
 7
 (3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,
 
 
 8
 for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State Law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.
 
 
 9
 12 U.S.C. § 1821(k) (emphasis added). The district court held, and defendants argue on appeal, that the section limits the FDIC's ability to pursue recovery from officers and directors to those cases in which it can demonstrate gross negligence under the applicable state definition. Under this interpretation, an action like this one, sounding in simple negligence, would be barred by the statute.
 
 
 10
 The FDIC contends that the last sentence of the statute is a "savings clause," and that the negligence action against the officers and directors of Tracy Collins is thus saved from the preemptive scope of the statute. Under the FDIC's construction, the statute preempts only those state laws that require a higher degree of culpability than gross negligence in actions brought by the FDIC against officers and directors. It would not, however, bar the FDIC from seeking recovery under a simple negligence theory in a state where such an action is otherwise permissible.[1]
 
 
 11
 In our judgment, the words used to describe the potential liability of officers and directors suggest that the section does not create an exclusive federal liability standard. Section 1821(k) provides that "a director or officer may be held personally liable for any monetary damages ... for gross negligence." 12 U.S.C. § 1821(k) (emphasis added). "May" is a permissive term, and it does not imply a limitation on the standards of officer and director liability. Rather, it suggests that notwithstanding state law to the contrary, an officer or director may be held liable for gross negligence. No reasonable construction of "may" suggests that it limits the liability of officers or directors to gross negligence. In other words, in states where an officer or director may be held liable for simple negligence, the FDIC may rely on state law to enable its action.
 
 
 12
 The last sentence of the statute cements our understanding of it. In construing a statute, reliance must be placed on an unambiguous statute's "evident" meaning. See Small v. Britton, 500 F.2d 299, 301 (10th Cir.1974). With this in mind, we believe that "other applicable law" means all "other applicable law." Under the statute then, any other law providing that an officer or director may be held liable for simple negligence survives; such law would be an "other applicable law," and construing the statute to bar its application would "impair" the FDIC's rights under it.
 
 
 13
 Moreover, it is a general rule of construction that the statute should be read as a whole. 2A N. Singer, Sutherland Statutory Construction § 46.05 (5th ed. 1992). Linguistic choices made by Congress in other sections of FIRREA enrich our understanding of the choice made by Congress in section 1821(k). Unless the rest of the statutory scheme gives us reason to think that section 1821(k) does not mean what it says, we will take the statute at its word.
 
 
 14
 In other parts of section 1821, the statute refers specifically to the other bodies of law it touches. See, e.g., 18 U.S.C. § 1821(c)(3)(B) ("powers imposed by State law"); id. (c)(4) ("notwithstanding any other provision of Federal law, the law of any State"). Similarly, when the statute refers only to itself, it does so specifically. See, e.g., id. (d)(2)(I) (FDIC may "take any action authorized by this chapter"); id. (e)(3)(C)(ii) ("except as otherwise specifically provided in this section"). Finally, when the statute refers to the whole universe of other laws, it uses the same language employed in section 1821(k). See id. (e)(12)(B) ("No provision of this paragraph may be construed as impairing or affecting any right ... under other applicable law."). Thus, consideration of the pattern of usage in the rest of FIRREA supports the position of the FDIC. It runs squarely against the suggestion of defendants that "other applicable law" refers to the FDIC's powers in "other contexts," Appellee's Answering Brief at 20, and the conclusion of the district court that it applies to other sections of FIRREA itself, Canfield, 763 F.Supp. at 537.
 
 
 15
 Defendants assert that the "other applicable law" language refers to the FDIC's rights in other contexts. By this they apparently mean rights of the FDIC against officers and directors, under state or federal law, to seek remedies other than personal damages. They reason that the last sentence would otherwise eviscerate the attempt to create a national standard of liability. The problem with this argument is that it limits the statutory language by fiat. We refuse to depart from the principle of "general adherence to the words of the statute as commonly understood.... [O]ur limited function, in deference to the legislative process, is to interpret and apply the law, not to make it." Miller v. C.I.R., 836 F.2d 1274, 1281 (10th Cir.1988).
 
 
 16
 The proposition that section 1821(k)'s plain language establishes a national standard of liability for officers and directors is made up out of whole cloth. The statute's reliance on state law for its definition of gross negligence directly refutes the proposition that FIRREA establishes a national standard of liability for officers or directors.[2] State law definitions of gross negligence differ. Indeed, "there is ... no generally accepted meaning [of gross negligence]." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 34, at 212 (5th ed. 1984). These differences mean that the statute cannot possibly, even without the last sentence, create a national standard. Once the notion of a national standard is dismissed, the function of the last sentence becomes clear. "[I]t is difficult to think of a more appropriate place to put a general saving clause than where Congress placed it--at the conclusion of the section setting out a special procedure for use in certain specified instances." Abbott Labs. v. Gardner, 387 U.S. 136, 145, 87 S.Ct. 1507, 1513-14, 18 L.Ed.2d 681 (1967). Under section 1821(k), then, states may require that the FDIC show "gross negligence," under the state definition, in order to establish an officer or director's personal liability. They simply may not require greater culpability.
 
 
 17
 In the face of the language, defendants in effect assert that section 1821(k) preempts the field of liability law governing officers and directors of federally insured institutions. Importantly, "field pre-emption cannot be inferred." Wisconsin Public Intervenor v. Mortier, --- U.S. ----, 111 S.Ct. 2476, 2486, 115 L.Ed.2d 532 (1991). It is true, however, that "[a]bsent explicit preemptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' " Id. at 2481 (citation omitted). In this case, the explicit preemptive language moves in only one direction. The statute blocks only those state laws that require more than gross negligence in order to establish the personal liability of directors and officers. By saving "other applicable law," the statute makes unreasonable any inference that the entire field was the target of the legislation. "Preemption should not ... be presumed absent a clear manifestation of federal intent to exclude state law provisions." Guschke v. City of Oklahoma City, 763 F.2d 379, 383 (10th Cir.1985) (emphasis added). At the very least, the statutory language fails to evince a "clear manifestation of federal intent" to preempt claims like the one brought by the FDIC below.
 
 II.
 
 18
 The legislative history of section 1821(k) does not demand a different conclusion than that reached through careful analysis of the statutory language. "The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances.' ..." Ardestani v. INS, --- U.S. ----, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). In this case, there are three relevant pieces of legislative history: a Senate floor debate considering the manager's amendment to FIRREA that led to the incorporation of section 1821(k) at conference; a section by section analysis of the final Senate bill prepared after the bill was enacted; and a Conference Report.
 
 
 19
 As originally proposed in the Senate, the provision would have held officers and directors liable for "any cause of action available at common law, including ... simple negligence." S. 774, 101st Cong., 1st Sess. § 214(n) (1989). During the Senate debate, the proposal was modified. Senator Riegle, the bill's floor manager, explained the purpose of the amended officer and director liability section with reference to state efforts to insulate officers and directors from personal liability. He said:
 
 
 20
 "In recent years, many States have enacted legislation that protects directors or officers of companies from damage suits. These 'insulating' statutes provide for various amounts of immunity to directors and officers. For example, in Indiana, a director or officer is liable for damages only if his conduct constitutes 'wilfull misconduct or recklessness.'
 
 
 21
 "The reported bill totally preempted state law in this area, with respect to suits brought by the FDIC against bank directors and officers. However, in light of the state law implications raised by this provision, the manager's amendment scales back the scope of this preemption."
 
 
 22
 135 Cong. Rec. S4278-79 (daily ed. April 19, 1989). Two other senators, Roth and Garn, specifically commented on the limited preemptive scope of the section. See id. at S4281. Construction of section 1821(k) to preempt only those state laws that seek to insulate officers or directors from liability for gross negligence accurately reflects the intention of the senators who addressed this issue during the Senate floor debate.
 
 
 23
 Defendants suggest that the comments of two other senators, Heflin and Sanford, see id. at S4264 (Heflin), S4277 (Sanford), expressing concern about the ability of federally insured institutions to attract qualified officers and directors, compel a different conclusion. Appellee's Answering Brief at 35. Unfortunately for defendants, Senator Heflin was discussing a different section of FIRREA; in response to his concerns, the standards governing the availability of civil money penalties under 12 U.S.C. § 1818(i)(2) are more rigid than originally proposed. See 135 Cong. Rec. S4265 (daily ed. April 19, 1989) (remarks of Sen. Riegle). Reliance on Senator Sanford's remarks is likewise misplaced. He was expressing his satisfaction at the limited scope of federal preemption of state law in the section. Id. at S4276-77. While attracting qualified persons to serve as officers or directors is an important goal of federal policy, section 1821(k) only establishes post-dissolution liability standards. States are still free to hold officers or directors liable for simple negligence prior to dissolution. The effect of federal civil money penalties imposed by other sections of FIRREA on an individual's willingness to serve as an officer or director of a federally insured institution is thus more significant than the post-dissolution effect of section 1821(k).
 
 
 24
 The strongest support for defendants' argument is found in the conference report. H.R.Rep. No. 222, 101st Cong., 1st Session, reprinted in 1989 U.S.C.C.A.N. 432, 437. The report provides in relevant part:
 
 
 25
 "Title II preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct."
 
 
 26
 Id. This statement is not unequivocal. However, while it paraphrases the first sentence of section 1821(k), it does not consider the impact of the last sentence. We do not assign much weight to that omission because "Committee Reports are not voted on by the full membership of both Houses, nor are they submitted to the President for his approval." Miller, 836 F.2d at 1282. As a result, particularly given the other indicia of legislative intention, we do not think that the Conference Report compels us to abandon our understanding of the last sentence of section 1821(k).
 
 
 27
 The language of the Senate Report supports our result. Discussing the amended section at issue, the report states: "This subsection does not prevent the FDIC from pursuing claims under State law or other applicable Federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence." 135 Cong. Rec. S6912 (daily ed. June 19, 1989). Although this Report was written after adoption of the bill,[3] it is indicative of the views of the Senate drafters. Where "[t]he legislative history ... cuts both ways," Miller, 836 F.2d at 1284, we rely even more heavily on the words of the statute, id. at 1283.
 
 III.
 
 28
 Finally, one public policy consideration deserves mention. Under defendants' interpretation, consider the position of an officer or director of a troubled federally insured institution in a state allowing actions for negligence. Prior to failure, liability would attach for simple negligence. After failure, liability would only attach if the officer or director could be proven grossly negligent. Thus, as the institution struggles, section 1821(k) would create an incentive to allow the bank to fail. It simply cannot be that FIRREA, designed among other things "to curtail ... activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds," H.R.Conf. Rep. 222, reprinted in 1989 U.S.C.C.A.N. at 432, would indirectly encourage such behavior.
 
 
 29
 We hold that the plain language of the statute demands reversal of the district court's opinion in this case. "In so concluding we do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hosp., --- U.S. ----, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991).
 
 
 30
 Accordingly, the decision of the court below is REVERSED.
 
 ORDER
 Filed: April 22, 1992
 
 31
 Before LOGAN, HOLLOWAY, SEYMOUR, MOORE, TACHA, BALDOCK, BRORBY, EBEL, and KELLY, Circuit Judges.
 
 
 32
 Appellees' suggestion for rehearing en banc is granted. The judgment entered February 24, 1992 is vacated. Oral argument shall be scheduled for the afternoon of May 12, 1992 in Denver at a time to be determined. The parties may file optional simultaneous briefs on rehearing not to exceed twenty-five pages. Any brief shall be filed with the clerk in Denver on or before May 4, 1992.
 
 
 33
 Chief Judge McKay and Judge Anderson did not participate in consideration of the suggestion for rehearing en banc.
 
 
 
 [1]
 The district courts that have considered this question are split, but a clear majority agrees with the FDIC's interpretation. See FDIC v. Williams, 779 F.Supp. 63 (N.D.Tex.1991) (rejecting district court opinion in this case); FDIC v. Miller, 781 F.Supp. 1271 (N.D.Ill.1991) (same); FDIC v. Isham, 777 F.Supp. 828 (D. Colo.1991) (same); FDIC v. Black, 777 F.Supp. 919 (W.D.Okla.1991) (same); FDIC v. McSweeny, 772 F.Supp. 1154 (S.D.Cal.1991) (same); FDIC v. Fay, 779 F.Supp. 66 (S.D.Tex.1991) (same); FDIC v. Haddad, 778 F.Supp. 1559 (S.D.Fla.1991) (same); FDIC v. Burrell, 779 F.Supp. 998 (S.D.Iowa 1991) (same). But see FDIC v. Brown, No. NC89-306, 1991 WL 294524 (D.Utah Nov. 18, 1991); FDIC v. Swager, 773 F.Supp. 1244 (D.Minn.1991)
 The two circuit opinions that have discussed section 1821(k) did not decide the issue facing us. See Home Sav. Bank, F.S.B. v. Gillam, 952 F.2d 1152, 1160-61 (9th Cir.1991); Gaff v. FDIC, 919 F.2d 384, 391 (6th Cir.1990). As a result, we are the first court of appeals to directly address the scope of section 1821(k).
 
 
 [2]
 In a different context, where Congress intended to create a national standard, the Supreme Court adopted a national definition of "burglary," rather than relying on state law definitions. See Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (construing 18 U.S.C. § 924(e)). The reason for adoption of a national standard was the disparity among various state definitions of the relevant statutory term, and the clear intent of Congress to create a national rule. Here, the specific choice to rely on state law definitions of gross negligence directly supports our conclusion that Congress did not adopt a national standard of director and officer liability when it enacted section 1821(k)
 
 
 [3]
 The section by section analysis of the bill was prepared later because of the bipartisan effort to address the savings and loan crisis early in 1989. See 135 Cong. Rec. S4242 (daily ed. April 19, 1989) (remarks of Senator Riegle)