967 F.2d 443
 61 USLW 2017
 FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,
v.
Charles R. CANFIELD; Benjamin F. Armstrong; Theodore May;
Newell P. Parkin; Mac Christensen; Richard A. Christenson;
Dale R. Curtis; Frank Diston; Robert Garff; Lee K.
Irvine; Ellis Ivory; Arch Madsen; Gus Paulos; Aline
Skaggs; Ronald Swenson; Harold W. Milner; and Ernest
Wilkinson, Defendants-Appellees.
Utah Bankers Association, the American Bankers Association,
Gene Rice, Lola M. Rice, George E. Leonard, Jr., Mary Sandra
Leonard, Gloria Leonard, Ernest F. Modzelewski, Nancy L.
Modzelewski, Reginald T. Morrison, Catherine G. Morrison,
Mel L. Decker, Clarice O. Decker, Donald S. Johnson, Marian
E. Johnson, Gilberto I. Valdez, Gloria Ann Valdez, Hayden C.
Hayden, Ms. Hayden C. Hayden, Peter C. Byrne, Mrs. Peter C.
Byrne, Howard E. Kraff, Mrs. Howard E. Kraff, and Utah State
Department of Financial Institutions, Amici Curiae.
 No. 91-4143.
 United States Court of Appeals,
Tenth Circuit.
 June 23, 1992.
 
 Edward J. O'Meara, Counsel, F.D.I.C., Washington, D.C. (Ann S. Duross, Asst. Gen. Counsel, Richard J. Osterman, Jr., Sr. Counsel, and Jeffrey Ross Williams, Sr. Atty., F.D.I.C., Washington, D.C.; and Warren Patten and Craig T. Jacobsen of Fabian & Clendenin, Salt Lake City, Utah, of counsel, with him on the brief), for plaintiff-appellant F.D.I.C.
 Robert S. Campbell, Jr. (Joann Shields of Campbell Maack & Sessions, Blake S. Atkin of Parry, Murray & Cannon, James R. Holbrook and Lynda Cook of Callister, Duncan & Nebeker, Michael N. Zundel of Jardine, Linebaugh, Brown & Dunn, Dale J. Lambert of Christensen Jensen & Powell, George J. Romney of Romney & Condie, and John W. Lowe, Salt Lake City, Utah, with him on the brief), for defendants-appellees.
 James S. Jardine and Don B. Allen of Ray, Quinney & Nebeker, Salt Lake City, Utah, filed brief for amicus curiae Utah Bankers Ass'n.
 John J. Gill, General Counsel, and Michael F. Crotty, Deputy General Counsel for Litigation, filed brief for amicus curiae American Bankers Ass'n.
 Aaron M. Peck, Terry O. Kelly, and Carl W. Sonne of McKenna & Fitting, Peter K. Rosen of Rosen & Winston, Los Angeles, Cal., and Stephen M. Dichter, and Gregg H. Temple of Harrison, Harper, Christian & Dichter, P.C., Phoenix, Ariz., for amici curiae Gene Rice, Lola M. Rice, George E. Leonard, Jr., Mary Sandra Leonard, Gloria Leonard, Ernest F. Modzelewski, Nancy L. Modzelewski, Reginald T. Morrison, Catherine G. Morrison, Mel L. Decker, Clarice O. Decker, Donald S. Johnson, Marian E. Johnson, Gilberto I. Valdez, Gloria Ann Valdez, Hayden C. Hayden, Ms. Hayden C. Hayden, Peter C. Byrne, Mrs. Peter C. Byrne, Howard E. Kraff, and Mrs. Howard E. Kraff.
 George Sutton, Com'r, Utah Dept. of Financial Institutions, Paul Van Dam, Atty. Gen. of State of Utah, Jan Graham, Utah Sol. Gen., Bryce H. Pettey, Asst. Atty. Gen., and Billy L. Walker, Sp. Asst. Atty. Gen., Salt Lake City, Utah, for amicus curiae Utah Dept. of Financial Institutions.
 Before HOLLOWAY, LOGAN, SEYMOUR, MOORE, TACHA, BALDOCK, BRORBY, EBEL, and KELLY, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 This case requires our construction of section 212(k) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(k) (Supp. I 1989). The Federal Deposit Insurance Corporation (FDIC) brought this action in its corporate capacity seeking to hold the officers and directors of the failed Tracy Collins Bank & Trust Company liable under Utah law for their allegedly negligent management of the institution. See 12 U.S.C. § 1823(c), (d)(3)(A); id. § 1821(d)(2)[1]; see also FDIC v. Bank of Boulder, 911 F.2d 1466, 1468-71 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991). The district court granted defendants' motion to dismiss, holding that section 1821(k) preempts state law and bars the FDIC from seeking damages from officers and directors of failed institutions for simple negligence. FDIC v. Canfield, 763 F.Supp. 533 (D.Utah 1991). A panel of this court concluded that this holding was contrary to the plain language of section 1821(k) and reversed. We granted rehearing en banc and vacated the panel opinion. After considering additional briefing and hearing oral argument, we conclude that the panel was correct.
 
 
 2
 "As in any case of statutory interpretation, we begin with the plain language of the law." United States v. Morgan, 922 F.2d 1495, 1496 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991). " 'Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (citation omitted). We review the construction of federal statutes de novo. United States v. Temple, 918 F.2d 134, 134 (10th Cir.1990).
 
 
 3
 The central question in this appeal is whether section 1821(k) establishes a national standard of gross negligence for officers and directors in actions brought by the FDIC, and thereby preempts state statutory or common law permitting such actions for simple negligence. The statute provides:
 
 
 4
 A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation--
 
 
 5
 (1) acting as conservator or receiver of such institution,
 
 
 6
 (2) acting based upon a suit, claim or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or
 
 
 7
 (3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,
 
 
 8
 for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State Law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.
 
 
 9
 12 U.S.C. § 1821(k) (emphasis added).
 
 
 10
 The district court held, and defendants argue, that section 1821(k) preempts state law and limits the FDIC's ability to pursue recovery from officers and directors to those cases in which it can demonstrate gross negligence under the applicable state definition. Under this interpretation, an action like this one, enabled by state law and sounding in simple negligence, would therefore be barred by the statute.
 
 
 11
 The FDIC contends that the statute preempts only those state laws that require a higher degree of culpability than gross negligence in actions brought by the FDIC against officers and directors.[2] Under the FDIC's construction, the last sentence of section 1821(k) is a "savings clause" that saves a simple negligence action against officers and directors of a failed bank in a state where such an action is otherwise permissible.[3]
 
 
 12
 In our judgment, the words used in section 1821(k) to describe the potential liability of officers and directors belie the creation of an exclusive federal liability standard. The section provides that "a director or officer may be held personally liable for monetary damages ... for gross negligence." 12 U.S.C. § 1821(k) (emphasis added). "May" is a permissive term, and it does not imply a limitation on the standards of officer and director liability. See Rose v. Rose, 481 U.S. 619, 626-27, 107 S.Ct. 2029, 2034, 95 L.Ed.2d 599 (1987) (Court refused to read "may" as establishing anything other than discretionary power). FIRREA enables the FDIC to stand in the shoes of the failed bank and its stockholders and to sue the officers and directors for mismanagement under state law. See 12 U.S.C. § 1821(d)(2) infra n. 1; id. § 1823(c), (d)(3)(A). In this context, no reasonable construction of "may" results in an absolute limitation of the liability of officers or directors to instances of gross negligence. Rather, the first sentence of section 1821(k) effectively provides that even where state law under which the FDIC is authorized to bring suit otherwise limits actions against officers and directors to intentional misconduct, an officer or director may nevertheless be held liable for gross negligence. In states where an officer or director is liable for simple negligence, however, the FDIC may rely, as it does in this case, on state law to enable its action.
 
 
 13
 In order to uphold the district court's construction of section 1821(k), we would have to construe the first sentence of the section as saying that an officer or director may only be held personally liable for gross negligence. This would require us to insert a word into the statute, and we decline to do so. See Resolution Trust Corp. v. Lightfoot, 938 F.2d 65, 66-67 (7th Cir.1991) ("may" does not, on its face, mean "may only").
 
 
 14
 The last sentence of the statute cements our understanding of it. In construing a statute, reliance must be placed on an unambiguous statute's "evident" meaning. See Small v. Britton, 500 F.2d 299, 301 (10th Cir.1974). With this in mind, we believe that "other applicable law" means all "other applicable law."[4] Under the statute then, any other law providing that an officer or director may be held liable for simple negligence survives; such a law would be an "other applicable law," and construing the statute to bar its application would "impair" the FDIC's rights under it.
 
 
 15
 It is a general rule of construction that the statute should be read as a whole. 2A N. Singer, Sutherland Statutory Construction § 46.05 (5th ed. 1992). Linguistic choices made by Congress in other sections of FIRREA enrich our understanding of the choice made by Congress in section 1821(k). Unless the rest of the statutory scheme gives us reason to think that section 1821(k) does not mean what it says, we will take the statute at its word. In other parts of section 1821, the statute refers specifically to the other bodies of law it touches. See, e.g., 12 U.S.C. § 1821(c)(3)(B) ("powers imposed by State law"); id. (c)(4) ("notwithstanding any other provision of Federal law, the law of any State"). Similarly, when the statute refers only to itself, it does so specifically. See, e.g., id. (d)(2)(I) (FDIC may "take any action authorized by this chapter"); id. (e)(3)(C)(ii) ("except as otherwise specifically provided in this section"). Finally, when the statute refers to the whole universe of other laws, it uses the same language employed in section 1821(k). See id. (e)(12)(B) ("No provision of this paragraph may be construed as impairing or affecting any right ... under other applicable law."). Consideration of the pattern of usage in the rest of FIRREA therefore supports the position of the FDIC. It runs squarely against the suggestion of defendants that "other applicable law" refers to the FDIC's powers in "other contexts," Appellee's Answering Brief at 20, and the conclusion of the district court that it applies to other sections of FIRREA itself, Canfield, 763 F.Supp. at 537.
 
 
 16
 Defendants urge that the "other applicable law" language refers to the FDIC's rights in other contexts. By this they apparently mean rights of the FDIC against officers and directors, under state or federal law, to seek remedies other than personal damages. Any other interpretation of the last sentence, they reason, would eviscerate the attempt to create a national standard of liability. The problem with this argument is that it limits the statutory language by fiat. Nowhere does the statute announce its intention to create a national standard of liability, and the vehemence of the assertions to the contrary made by defendants will not persuade us to interpret the statute in light of a fiction. We refuse to depart from the principle of "general adherence to the words of the statute as commonly understood.... [O]ur limited function, in deference to the legislative process, is to interpret and apply the law, not to make it." Miller v. Commissioner, 836 F.2d 1274, 1281 (10th Cir.1988).
 
 
 17
 The statute's reliance on state law for its definition of gross negligence directly refutes the proposition that FIRREA establishes a national standard of liability for officers or directors.[5] State law definitions of gross negligence differ. Indeed, "there is ... no generally accepted meaning [of gross negligence]." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 34, at 212 (5th ed. 1984). These differences mean that the statute cannot possibly, even without the last sentence, create a national standard of liability. Instead, section 1821(k) limits the ability of the states to insulate officers and directors of federally insured institutions from liability. Once the notion of a national standard is dismissed, the function of the last sentence becomes clear. "[I]t is difficult to think of a more appropriate place to put a general saving clause than where Congress placed it--at the conclusion of the section setting out a special procedure for use in certain specified instances." Abbott Labs. v. Gardner, 387 U.S. 136, 145, 87 S.Ct. 1507, 1513-14, 18 L.Ed.2d 681 (1967) (emphasis added). Under section 1821(k), states may require that the FDIC show "gross negligence," under the state definition, in order to establish an officer or director's personal liability. They simply may not require greater culpability.
 
 
 18
 The officers and directors offer a reading of section 1821(k) contrary to the established principle of statutory construction that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." 2A N. Singer, Sutherland Statutory Construction § 46.06. Under defendants' suggested interpretation, both the first and the second sentence say the same thing. The first sentence announces the exclusive liability standard, while the second makes the same announcement in a different form. The second sentence thus serves no independent purpose; it merely explicitly limits the application of the gross negligence standard to actions against officers and directors for money damages. This construction is necessarily less compelling than our construction, which gives each of the sentences independent force.
 
 
 19
 In the face of the language, defendants in effect assert that section 1821(k) preempts the field of liability law governing officers and directors of federally insured institutions. Importantly, "field pre-emption cannot be inferred." Wisconsin Public Intervenor v. Mortier, --- U.S. ----, 111 S.Ct. 2476, 2486, 115 L.Ed.2d 532 (1991). It is true that "[a]bsent explicit pre-emptive language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' " Id. at 2481 (citation omitted). In this case, the explicit preemptive language moves in only one direction and its scope is explicitly limited. The statute blocks only those state laws that require more than gross negligence in order to establish the personal liability of directors and officers. By saving "other applicable law," the statute makes unreasonable any inference that the entire field was the target of the legislation. "Preemption should not ... be presumed absent a clear manifestation of federal intent to exclude state law provisions." Guschke v. City of Oklahoma City, 763 F.2d 379, 383 (10th Cir.1985) (emphasis added). At the very least, the statutory language fails to evince a "clear manifestation of federal intent" to preempt claims like the one brought by the FDIC below.
 
 
 20
 The policy arguments marshalled by the officers and directors against a negligence standard are addressed to the wrong forum. By saving "other applicable law," Congress left it to the states to decide the propriety of a simple negligence standard. In reaching that decision, a state may well choose to consider the difficulty of obtaining liability insurance, and the need to attract those people defendants claim will not accept directorships under a simple negligence standard. Unlike a state legislature making such a policy choice, we are in no position to weigh these factors. Instead, we may consider only whether the statute prohibits the FDIC from pursuing the action it has filed in Utah against these defendants. On its face, section 1821(k) does not do so.[6]
 
 
 21
 Finally, under defendants' interpretation, consider the position of an officer or director of a troubled federally insured institution in a state allowing actions for negligence. Prior to failure, liability would attach for simple negligence. After failure, liability would only attach if the officer or director could be proven grossly negligent under the applicable state definition. As the institution struggles, therefore, section 1821(k) would create an incentive for the officers and directors to allow the bank to fail. It simply cannot be that FIRREA would indirectly encourage such behavior when it was designed in part, according to its stated purposes, "to curtail ... activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds." FIRREA, Pub.L. No. 101-73, § 101(3), 103 Stat. 183, 187 (1989) (emphasis added).
 
 
 22
 We hold that the plain language of the statute demands reversal of the district court's opinion in this case. "In so concluding we do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hosp., --- U.S. ----, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991).
 
 
 23
 Accordingly, the decision of the court below is REVERSED.
 
 
 24
 BRORBY, Circuit Judge, respectfully dissenting.
 
 
 25
 Few are so naive as to believe there exists but a single correct interpretation of any given statute. Those who are intellectually honest admit the real question is: Which "correct" interpretation will the court adopt, and why?[1]
 
 
 26
 The parties in this case have aptly illustrated that Congress' choice of language in 12 U.S.C. § 1821(k) is susceptible to two valid yet opposing interpretations. The majority has adopted the FDIC's interpretation--the plain words of § 1821(k) do not create an exclusive federal standard of liability for bank directors and officers in civil damages suits brought by the FDIC. This interpretation is supportable and the majority opinion is well written; however, I fear the majority has lost sight of the forest but for a single tree. When construing statutes we must remember "laws are not abstract propositions. They are expressions of policy arising out of specific situations and addressed to the attainment of particular ends." Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527 (1947), reprinted in 3 N. Singer, Sutherland Statutory Construction 265, 272 (4th ed. 1986). Believing the majority has construed the phrase "other applicable law" in isolation from the substantive import of § 1821(k) and the overriding objectives of the national banking system, I respectfully dissent. The better interpretation of § 1821(k)--the interpretation advocated by defendant directors and officers and numerous Amici Curiae--not only gives effect to the plain language of the statute, but also serves Congress' longstanding goal to achieve uniform administration of federal financial institutions and heeds important public policy concerns which underlie this legislation.
 
 
 27
 Congress enacted § 1821(k) of FIRREA as part of its extensive revision of the national banking system and "to nationalize the law of directors' and officers' liability when banks are taken over by the FDIC." Gaff v. FDIC, 919 F.2d 384, 391 (6th Cir.1990).[2] The substantive import of the statute is set forth in the first sentence[3] and its message is unmistakable: § 1821(k) establishes a threshold gross negligence standard of officer and director personal liability for money damages arising from bank losses.[4] As concisely stated by the district court,
 
 
 28
 [t]his part of the statute expressly defines the parameters of liability for officers and directors where the FDIC is acting as a successor in interest to the claims of a depository institution. It carefully sets the standard and defines the terms used, including a reference to state law where one is intended and encompassed.... Congress clearly intended to preempt conflicting state and federal law on the issue of director and officer liability in this area and set a standard of gross negligence.
 
 
 29
 FDIC v. Canfield, 763 F.Supp. 533, 536 (D.Utah 1991). In defining the applicable standard as gross negligence,[5] language indicating liability might be imposed for simple negligence is conspicuously absent.
 
 
 30
 It is at this point and within this context that we must consider the meaning of the last sentence of § 1821(k).[6] Simply put, to read the last sentence to preserve the FDIC's right to bring actions against directors and officers of closed institutions based on state liability standards below § 1821(k)'s gross negligence threshold not only ignores the plain language of the first sentence, but also renders the substantive import of § 1821(k)--the specific, unambiguous gross negligence standard--facially meaningless. The majority fails to address why Congress would go to the trouble of defining a threshold standard of liability only to preserve the gamut of FDIC's state law causes of action which arguably require a lesser disregard of duty of care than gross negligence.[7] Absent a satisfactory explanation for this inherent contradiction, the phrase "other applicable law" should be construed to exclude state law claims.[8]
 
 
 31
 My proposed interpretation of § 1821(k) is further supported by public policy considerations inextricably woven into the FIRREA umbrella.[9] FIRREA was enacted in response to the massive institutional failures of the past decade and in hopes of curbing continuing instability in the financial industries. Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101-73, 1989 U.S.C.C.A.N. 87. Such failures and instability have never been attributed in significant part to the simple negligence of officers and directors of depository institutions. Instead, these failures are believed to primarily result from insider abuse and fraud. Thus, simple negligence is not the problem FIRREA was designed to remedy.
 
 
 32
 In this context, it is difficult to imagine how FIRREA's goals will be served by the majority's interpretation--an interpretation which will breed inconsistent application of a pivotal national banking statute by causing directors' and officers' personal liability to turn not on the gravity of the alleged misconduct, but rather, on the state situs of the federally insured bank. The practical effect of the majority's interpretation is perhaps best illustrated by a simple hypothetical: In these days of interstate branch banking, Ms. X, a resident of State Y, may very well be a director of banks located in State Y and State Z. Because the majority has concluded the standard of care demanded of Ms. X as a bank director is a function of the location of the bank, Ms. X's evaluation and approval of a particular loan application might never be questioned in State Y, while the same evaluation and approval would expose her to personal liability for subsequent losses in State Z.
 
 
 33
 The majority's interpretation of § 1821(k) also contravenes the long recognized need to attract and retain bright, ambitious community leaders to serve as officers and directors. Under the majority's interpretation the personal risk is just too great.[10] By its very nature, the lending business is risky. Bank officers and directors are responsible for managing that risk; however, it is not possible to do so in a manner that results in no losses or only in losses that will be found in retrospect to have been unavoidable. Given the benefit of hindsight and a simple negligence or fiduciary standard, the FDIC is a formidable opponent. Under these circumstances, no reasonable attorney would advise his client to accept, and no reasonable person would accept an offer to become a bank officer or director. As FIRREA was enacted in part to drive thieves and self-dealers from financial institutions, it seems illogical to hold Congress wished to drive honest, responsible persons with assets to protect from banking directorships, especially at a time when the need for such individuals is so great.
 
 
 34
 In summary, the basis for my dissension is simple: It is unreasonable to interpret § 1821(k) so as to render its substantive import meaningless. Moreover, it is incongruous to interpret legislation designed to assure the safety and soundness of this country's banking system, in large part by establishing uniform regulatory control over federal financial institutions, in such a manner as to subject the directors and officers of those institutions to varying standards of liability dependent solely upon the institutions' locale. For these reasons, I would interpret the plain language of 12 U.S.C. § 1821(k) to define an exclusive, uniform federal threshold of gross negligence for the personal liability of bank directors and officers named in civil damage suits brought by the FDIC.
 
 
 35
 JOHN P. MOORE, Circuit Judge, dissenting.
 
 
 36
 I join with Judge Brorby and concur in his dissent. I write separately only to underscore my belief that if Congress intended to establish a standard of simple negligence for director and officer liability, it would have said so unequivocally. To conclude the Congress intended another result, the majority must indulge in a convoluted statutory construction that defies my form of fundamental logic. Thus, I see it as a misconstruction of congressional intent to effectively read out of § 1821(k) the gross negligence limitation.
 
 
 
 [1]
 Section 1821(d) provides:
 (2) General powers
 (A) Successor to Institution
 The Corporation shall, as conservator or receiver, and by operation of law, succeed to--
 (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; ....
 
 
 [2]
 Recently, numerous states have acted to insulate officers and directors from liability. At least two states require willful or wanton conduct in order for liability to attach. See Ind.Code Ann. § 23-1-35-1(e) (West 1991); Wis.Stat.Ann. § 180.0828(1) (West 1992). Other states have adopted less extreme approaches. See, e.g., Va.Code Ann. § 13.1-690 (Michie 1989) (good faith business judgment). Some states permit corporations to opt into a restriction on liability. For example, the Colorado statute authorizes a corporation to adopt "a provision to eliminate or limit the personal liability of a director ... for monetary damages for breach of fiduciary duty as a director." Colo.Rev.Stat. § 7-3-101(1)(u). For a chart summarizing the various state laws, see James J. Hanks, Jr., Recent State Legislation on D & O Liability Limitation, 43 Bus.Law. 1207, 1246-54 (1988). For a general discussion of the issue, see id. at 1243 ("Since 1985, more than four-fifths of the states have enacted some form of legislation designed to protect directors from money damages."); Douglas M. Branson, Assault on Another Citadel: Attempts to Curtail the Fiduciary Standard of Loyalty Applicable to Corporate Directors, 57 Fordham L.Rev. 375 (1988)
 
 
 [3]
 The district courts that have considered this question are split, but a clear majority agrees with the FDIC's interpretation. See FSLIC v. Shelton, 789 F.Supp. 1360 (M.D.La.1992) (following panel opinion); FDIC v. Williams, 779 F.Supp. 63 (N.D.Tex.1991) (rejecting district court opinion in this case); FDIC v. Miller, 781 F.Supp. 1271 (N.D.Ill.1991) (same); FDIC v. Isham, 777 F.Supp. 828 (D.Colo.1991) (same); FDIC v. Black, 777 F.Supp. 919 (W.D.Okla.1991) (same); FDIC v. McSweeny, 772 F.Supp. 1154 (S.D.Cal.1991) (same); FDIC v. Fay, 779 F.Supp. 66 (S.D.Tex.1991) (same); FDIC v. Haddad, 778 F.Supp. 1559 (S.D.Fla.1991) (same); FDIC v. Burrell, 779 F.Supp. 998 (S.D.Ia.1991) (same). But see FDIC v. Brown, No. NC89-306, 1991 WL 294524 (D.Utah Nov. 18, 1991); FDIC v. Swager, 773 F.Supp. 1244 (D.Minn.1991)
 The two circuit opinions that have discussed section 1821(k) do not decide the issue facing us. See Home Sav. Bank, F.S.B. v. Gillam, 952 F.2d 1152 (9th Cir.1991); Gaff v. FDIC, 919 F.2d 384, 391 (6th Cir.1990). As a result, we are the first court of appeals to directly address the scope of section 1821(k).
 
 
 [4]
 In Patterson v. Shumate, --- U.S. ----, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court read the phrase "applicable nonbankruptcy law" used in 11 U.S.C. § 541(c)(2) to include state and federal law. "Plainly read, the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA. We must enforce the statute according to its terms." Id. at 2247. This principle applies with equal force here
 
 
 [5]
 In a different context, where Congress intended to create a national standard, the Supreme Court adopted a national definition of "burglary," rather than relying on state law definitions. See Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (construing 18 U.S.C. § 924(e)). Section 924(e) does not refer to any source for the definitions of the terms it employs. See 18 U.S.C. § 924(e) (1988). Here, the specific choice to rely on state law definitions of gross negligence directly supports our conclusion that Congress did not adopt a national standard of officer and director liability when it enacted section 1821(k)
 
 
 [6]
 The legislative history is consistent with our interpretation of the statute's plain language. As originally proposed in the Senate, the provision would have held officers and directors liable for "any cause of action available at common law, including ... simple negligence," thus totally preempting all more restrictive state laws. S. 774, 101st Cong., 1st Sess. § 214(n) (1989). During the Senate debate, the proposal was modified. Senator Riegle, the bill's floor manager, explained the purpose of the amendment:
 In recent years, many States have enacted legislation that protects directors or officers of companies from damage suits. These 'insulating' statutes provide for various amounts of immunity to directors and officers. For example, in Indiana, a director or officer is liable for damages only if his conduct constitutes "willful misconduct or recklessness."
 The reported bill totally preempted state law in this area, with respect to suits brought by the FDIC against bank directors and officers. However, in light of the state law implications raised by this provision, the manager's amendment scales back the scope of this preemption.
 
 
 [135]
 Cong.Rec. S4278-79 (daily ed. April 19, 1989) (emphasis added). Two other senators, Roth and Garn, specifically commented on the limited preemptive scope of the section. See id. at S4281
 The Conference Report, relied on by defendants, is not to the contrary. It provides that: "The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct." Id. 1989 U.S.C.C.A.N. 86,437. (emphasis added). The language of the report merely explains that the section allows actions for gross negligence. It is thus consistent with the partial preemption interpretation of the statute.
 Finally, the language of the final Senate Report fully supports our result. Discussing the amended section, the report states: "This subsection does not prevent the FDIC from pursuing claims under State law or other applicable Federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence." 135 Cong.Rec. S6912 (daily ed. June 19, 1989).
 
 
 [1]
 For nearly every canon of statutory construction, there exists an opposing canon which supports a contrary interpretation. See Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed, 3 Vand.L.Rev. 395 (1950), reprinted in 3A N. Singer, Sutherland Statutory Construction 203, 206-09 (4th ed. 1986)
 
 
 [2]
 Although the interpretation of § 1821(k) was not squarely before the Gaff court, the Sixth Circuit's reading of § 1821(k) was integral to its holding that federal law totally preempts state law under various FIRREA sections, including § 1821(k)
 
 
 [3]
 This sentence reads in relevant part:
 A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by ... the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law.
 12 U.S.C. § 1821(k) (emphasis added).
 
 
 [4]
 Given the unmistakable purpose of § 1821(k) to define a standard of liability, the majority's discussion of the term "may" is a red herring. See maj. op. at 446. Read in context, the word "may" refers to the right of the FDIC to bring an action under this section. "May" cannot reasonably be read to qualify the gross negligence liability standard and is therefore irrelevant to the substance of the provision
 
 
 [5]
 The majority asserts "the statute's reliance on state law for its definition of gross negligence directly refutes the proposition that FIRREA establishes a national standard of liability for officers or directors." Maj. op. at 447. This assertion is simply unfounded. A world of difference exists between defining a standard of liability vis-a-vis the rights of the FDIC to pursue an action under § 1821(k) and congressional deference to variations in the wordage used by states to define the applicable "gross negligence" standard
 
 
 [6]
 Recall, the last sentence reads: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." 12 U.S.C. § 1821(k)
 
 
 [7]
 To suggest the law in most states precludes suits based on liability standards requiring a lesser disregard of duty of care than gross negligence, see Maj. op. at 445 n. 2, is to understate the issue. A closer evaluation of state law designed to insulate officers and directors from liability reveals the degree of liability protection varies greatly from state to state. See generally, James J. Hanks, Jr., Evaluating Recent State Legislation on Director and Officer Liability Limitation and Indemnification, 43 Bus.Law. 1207 (1988)
 For example, by enacting charter option statutes, the majority of states (approximately 31) leave the decision to the corporation whether to adopt a provision eliminating or limiting the personal liability of a director or officer. Id. at 1210. Furthermore, charter option statutes vary among states--the principal difference being the enumerated exceptions, "which in effect state the standard that a plaintiff must meet in order to impose personal liability for money damages upon a director." Id. at 1211. These exceptions may be as broad as "[b]reach of the director's duty of loyalty to the corporation or its stockholders" or " 'any appropriation, in violation of [the director's] duties, of any business opportunity of the corporation,' " or as narrow as "[k]nowing violation of the law." Id. at 1211-12. Moreover, many states have adopted a broad statutory standard patterned after section 8.30(a) of the Revised Model Business Corporation Act (RMBCA). The RMBCA standard requires directors "to act in 'good faith,' with the care of an 'ordinarily prudent person in a like position ... under similar circumstances,' and in a manner 'he reasonably believes to be in the best interests of the corporation.' " Id. at 1212. Conduct not rising to the level of gross negligence could arguably satisfy these broader liability standards. In addition, liability limitation by charter provision usually does not apply to conduct occurring prior to the effective date of the provision. Id. at 1211.
 The ready availability of claims based on liability standards requiring a lesser disregard of duty of care than gross negligence is further evidenced by the cases filed. Cases in this Circuit alone indicate the FDIC does not hesitate to pursue civil litigation against directors and officers after a financial institution fails. Moreover, FDIC complaints typically set forth claims of common law negligence, fraud and breach of fiduciary duty. If these claims are unauthorized in most states as the majority suggests, then Fed.R.Civ.P. 11 sanctions may be warranted in future cases.
 
 
 [8]
 The Conference Report, which is the best evidence of the congressional intent behind § 1821(k) as it was finally enacted, squarely and conclusively states,
 Title II [section 1821(k) ] preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.
 H.Rep. No. 101-222, 101st Cong., 1st Sess. 393, 398 (1989), reprinted in 1989 U.S.C.C.A.N. 432, 437.
 
 
 [9]
 The only public policy concern expressed by the majority is more imagined than real. Fearing that Defendants' interpretation of § 1821(k) would create an incentive to allow the bank to fail because the liability standard after closure would be gross negligence rather than simple negligence, maj. op. at 449, the majority apparently overlooked the likelihood that deliberate conduct designed to allow a bank to fail in order to take advantage of the gross negligence standard would in and of itself constitute gross negligent conduct actionable under § 1821(k)
 
 
 [10]
 Notably, because of the "regulatory exclusion" clause, insurance is generally not available to protect officers and directors from personal financial loss where claims are brought by the FDIC or other government regulatory agencies