The **MERIDEN TRUST AND SAFE DEPOSIT COMPANY**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Hoyle L. Robinson and John W. Stone.**

**Civ. No. 2:92CV967(AVC).**

United States District Court, D. Connecticut.

June 30, 1994.

Thomas J. Groark, Jr., Charles W. Fortune, Kathleen N. Dondero, Day, Berry & Howard, Hartford, CT, for plaintiff.

John B. Hughes, U.S. Attys. Office, New Haven, CT, Tom Holzman, F.D.I.C., Washington, DC, for F.D.I.C.

John B. Hughes, U.S. Attys. Office, New Haven, CT, for Hoyle L. Robinson, John W. Stone.

COVELLO, District Judge.

EAGAN, United States Magistrate Judge.

On October 16, 1992, the Federal Deposit Insurance Corporation (hereinafter "FDIC") issued a notice of assessment of liability against the Meriden Trust and Safe Deposit Company (hereinafter "Meriden Trust"). Relying on cross-guarantee provision 12 U.S.C. § 1815(e), the FDIC asserts that Meriden Trust is liable for losses it incurred in connection with the default of Meriden Trust's affiliated institution, the Central Bank for Savings (hereinafter "Central Bank"). The parties have filed cross-motions for summary judgment on the issue of Meriden Trust's cross-guarantee liability under § 1815(e). For the reasons set forth below, the FDIC's Motion to Dismiss or For Summary Judgment (# 25) is GRANTED and Meriden Trust's Motion for Summary Judgment (# 28) is DENIED.

## I. Background

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree on the material facts underlying this suit; they have urged the Court to accept as undisputed the facts as set forth in the May 10, 1993 recommended ruling of Administrative Law Judge Walter J. Alprin (hereinafter the "ALJ"). *See* Meriden Trust's Motion for Summary Judgment (filed November 22, 1993); FDIC's Statement of Material Facts Not In Dispute (filed November 1, 1993). Accordingly, upon review of the submissions of the parties, and after oral

argument held on February 2, 1994, the Court finds the following undisputed material facts. *See* Local Rule 9(c).

1. At all times pertinent to this proceeding the FDIC was and still is a public corporation operating in accordance with and subject to Title 12, Chapter 16, of the United States Code.

2. At all times pertinent to this proceeding Respondent [Meriden Trust] was and still is a "state bank and trust company" pursuant to section 36–2(i) of the Connecticut General Statutes. Central Bank was an insured state nonmember bank subject to the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1811–1831 and the regulations thereunder, and to the laws of the State of Connecticut.

3. On September 22, 1987, CenVest, Inc. became a bank holding company and acquired all of the outstanding capital stock of Central Bank, a "state bank and trust company" pursuant to section 36–2(i) of the Connecticut General statutes, and a financial institution insured by the FDIC and subject to the FDIA.

4. On November 22, 1988, CenVest acquired all the outstanding capital stock of respondent, a financial institution insured by the FDIC and subject to the FDIA, which in addition to trust operations had a commercial bank division, accepted deposits, and provided checking services and granted loans. CenVest transferred all of Respondent's assets and liabilities, expect those relating to trust operations, to Central Bank.

5. Respondent had applied to the FDIC for, and was issued deposit insurance on June 17, 1971. When Respondent was acquired by CenVest on November 22, 1988, the issue of whether to continue FDIC insurance was put to CenVest's Chairman, who decided to retain it in the sense of retaining the abilities, if not the functions, of a full service bank rather than later being required to reapply for the privileges conferred if it decided to renew full service operations. Respondent has paid its deposit insurance premiums, and filed the required "call reports," continuously to at least July 16, 1992.

6. As of October 1991 and until February 1992, Respondent held an insured deposit of $100,000 in the name of Central Bank, and until May 1992 another insured deposit of $100,000 in the name of CenVest.

7. October 18, 1991, Central Bank become insolvent and was later closed, the FDIC was appointed its receiver, by virtue of all of which Central Bank was in "default" as that term is defined in 12 U.S.C. § 1813(x)(1). Respondent is the only remaining subsidiary of Cenvest.

8. By letter dated January 28, 1992, Respondent informed the FDIC that it no longer considered itself an "insured depository institution" because it no longer accepted deposits.

9. On October 16, 1992, FDIC issued the Notice of Assessment of Liability against Respondent as an insured depository institution liable for any loss incurred or reasonably anticipated to be incurred by the FDIC in connection with the default of a commonly controlled insured institution, in the amount of $151,852,000.

*In the Matter of the Meriden Trust and Safe Deposit Co.,* Docket No. FDIC92–241kk, Order Denying Respondent's Motion to Dismiss and Recommending Ruling on Cross–Motions for Summary Disposition in Favor of the Corporation at 5–6 (FDIC Wash. D.C. May 10, 1993).

Meriden Trust sought administrative review of the FDIC's decision to assess cross-guarantor liability upon it. On the basis of the aforementioned facts, ALJ found, *inter alia,* that Meriden Trust is subject to cross-guarantee liability under 12 U.S.C. § 1815(e) for any loss incurred by the FDIC in connection with the default of commonly controlled insured depository institution, Central Bank, and therefore upheld the FDIC's $151,852,-000 assessment. Upon review, the Board of Directors of the FDIC, acting by Executive Secretary Hoyle L. Robinson, concurred in and adopted the ALJ's findings of fact and conclusions of law, thereby affirming the conclusion that Meriden Trust is an insured depository institution which is subject to the cross-guarantee provisions of 12 U.S.C. § 1815(e). *In the Matter of the Meriden Trust and Safe Deposit Company,* Docket

No. FDIC–92–241kk, Decision and Order (FDIC Wash. D.C. September 21, 1993).

## II. Discussion

Having exhausted their administrative remedies, Meriden Trust asks this Court to review the FDIC's decision. *See* 12 U.S.C. § 1815(e)(3)(A). In its three count Amended Complaint, Meriden Trust asks the Court (a) to declare that the decision of the FDIC's Board of Directors is clearly erroneous and that Meriden Trust is not an "insured depository institution" as that term is contemplated by 12 U.S.C. § 1815(e); and (b) to declare that the judgment assessed against Meriden Trust is unconstitutional under the Fifth Amendment to the United States Constitution.

### A.

■ In relevant part, 12 U.S.C. § 1815(e)(1)(A) provides:

> Any insured depository institution shall be liable for any loss incurred by the [FDIC], or any loss which the [FDIC] reasonably anticipates incurring, after August 9, 1989 in connection with (i) the default of a commonly controlled institution; or (ii) any assistance provided by the [FDIC] to any commonly controlled insured depository institution in danger of default.

An "insured depository institution" is defined as "any bank or savings association the deposits of which are insured by the Corporation." 12 U.S.C. § 1813(c)(2). It is undisputed that Meriden Trust and Central Bank were commonly controlled. It is undisputed that Meriden Trust maintained two deposits which were insured by the FDIC. It is undisputed that, because Meriden Trust maintained the federal deposit insurance, and it could have accepted deposits from the public. In that sense, Meriden Trust was, at all times relevant to this action, an "insured depository institution." Accordingly, the administrative decision of the FDIC's Board of Directors is supported by the record and must be upheld. *See, e.g., Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *Federal Power Commission v. Transcontinental*

*Gas Pipeline Corp.,* 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976).

■ Meriden Trust argues that, because it did not take deposits from the general public, and therefore was not "engaged in the business of receiving deposits," *see* 12 U.S.C. § 1813(a)(2), it was not an insured "depository" institution which is subject to cross-guarantee liability. Memorandum in Support of Meriden Trust's Motion for Summary Judgment and in Opposition to the FDIC's Motion for Summary Judgment (filed November 22, 1993) (hereinafter "Meriden Trust Memo") at 9. Meriden Trust's focus on the word "depository" creates a semantic discrepancy where none actually exists. As the FDIC Interpretative Letters upon which Meriden Trust relies imply, the requirement that an institution accept savings deposits from the general public is a threshold requirement for obtaining FDIC insurance. However, once a bank is designated as an institution "engaged in the business of receiving deposits" and therefore eligible to participate in the FDIC insurance fund, that institution is an "insured depository institution" until it obtains prior written consent of the FDIC to convert into a noninsured bank or institution. *See* 12 U.S.C. § 1828(i)(3). By accepting Meriden Trust's position, this Court would implicitly sanction a Bank's unilateral choice to simultaneously accept the actual or potential advantages of FDIC insurance and avoid the actual or potential liability to which it may be subject as a result of participation in the fund. The passage of FIRREA was designed to avoid such a result. *See FDIC v. Canfield,* 967 F.2d 443, 449 (10th Cir.1992), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992) (FIRREA was designed, in part, to curtail activities of savings associations that pose unacceptable risks to the Federal Deposit Insurance fund.)

### B.

■ Meriden Trust further argues that "[b]ecause the FDIC assessment of Meriden Trust has severe economic consequences, is contrary to the reasonable expectations of Meriden Trust, and permanently denies Meriden Trust the exclusive possession of its property, the assessment constitutes a taking

under the Fifth Amendment." Meriden Trust Memo at 22. In *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), the Supreme Court held that the withdrawal liability provisions of the Multiemployer Pension Plan Amendments Act of 1980 do not violate the Taking Clause of the Fifth Amendment. Addressing arguments similar to those tendered by Meriden Trust, the Court explained:

> [The] appellants's submission—that such a statutory liability to a private party always constitutes an uncompensated taking prohibited by the Fifth Amendment—if accepted, would prove too much. In the course of regulating commercial and other human affairs, Congress routinely creates burdens for some that directly benefit others. For example, Congress may set minimum wages, control prices, or create causes of action that did not previously exist. Given the propriety of the governmental power to regulate, it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another. In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 [96 S.Ct. 2882, 49 L.Ed.2d 752] (1976), we sustained a statute requiring coal mine operators to compensate former employees disabled by pneumoconiosis, even though the operators had never contracted for such liability, and the employees involved had long since terminated their connection with the industry. We said: "[O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.... This is true even though the effect of the legislation is to impose a new duty or liability based on past acts."

475 U.S. at 222–23, 106 S.Ct. at 1025.

Here, Meriden Trust voluntarily chose to maintain FDIC insurance. Accordingly, Meriden Trust's claim that it could not reasonably expect to be subject to statutory cross-guarantee liability rings hollow. The Court is not persuaded that the application of § 1815(e) in the instant case operates as unconstitutional taking under the Fifth Amendment.

### III. Conclusion

The FDIC's Motion for Summary Judgment (# 25) is GRANTED. Meriden Trust's Motion for Summary Judgment (# 28) is DENIED.

Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 26th day of April, 1994.