**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Jose Joaquin GONZALEZ–GORRONDO-NA, Jr., a/k/a Jose Joaquin Gonzalez Gorrondona Centeno, a/k/a Jose Joaquin Gonzalez Centeno, George L. Childs, Jr., John E. Davis, Jr., Leland D. O'Connell, Andrew F. Toxey, A.E. "Bo" Raney, Robert L. Shevin, Reuben M. Schneider, Clarke Walden, Thaddeus R. Chamberlain, and Juan David Morgan, Defendants.**

**No. 91–2791–CIV.**

United States District Court, S.D. Florida.

March 19, 1993.

---

Jon Zeder, Adorno & Zeder, Frank R. Rodriguez, Diane D. Ferraro, Paulino A. Nunez, Jr., Friedman, Rodriguez & Ferraro, Miami, FL, for plaintiff F.D.I.C.

Bruce W. Greer, Joseph A. Demaria, Greer, Homer & Bonner, Miami, FL, for defendants Jose Joaquin Gonzalez–Gorrondona, Jr., and George Childs, and intervenor-defendant Caribank Corp.

Robert G. Hewitt, Harper & Hewitt, Miami, FL, for defendant Clark Walden.

Jonathan Goodman, Richey, Munroe & Rodriguez, Miami, FL, for defendant Robert L. Shevin.

Gerald B. Wald, Murai, Wald, Biondo, Moreno & Mendoza, Miami, FL, for defendant Thaddeus R. Chamberlain.

Maurice M. Garcia, Abrams, Anton, Robbins, Resnick & Schneider, Hollywood, FL, for defendant Reuben M. Schneider.

Joseph A. Hubert, Hubert & Tompkins, Ft. Lauderdale, FL, for defendants John E. Davis, Jr., Leland D. O'Connell and Andrew F. Toxey.

Thomas H. Seymour, Deborah A. Sampieri, Kenny Nachwalter Seymour Arnold & Critchlow, Miami, FL, for defendant Juan David Morgan.

## ORDER ON MOTIONS TO DISMISS AND MEMORANDUM OPINION

MARCUS, District Judge.

THIS CAUSE comes before the Court upon motions of defendants, Jose Joaquin Gonzalez–Gorrondona, Jr., Juan David Morgan, George L. Childs, Jr., Thaddeus R. Chamberlain, Reuben M. Schneider, Robert L. Shevin and A.E. Raney, former directors and officers of Caribank, a failed state-chartered and federally insured savings and loan association, to dismiss several counts of the Verified Complaint filed by the FDIC for failure to state a claim upon which relief can be granted.[1] Defendants move to dismiss Count I (negligence), Count II (breach of fiduciary duty), Count III (breach of contract), and Count VII (restitution). In addition, Defendants seek dismissal for vagueness or in the alternative move for a more definite statement under Fed.R.Civ.P. 12(e). For the reasons detailed at some length below, we DENY Defendants' motion to dismiss Count I, GRANT the motions to dismiss Count II WITHOUT PREJUDICE, GRANT Defendants' motions to dismiss Count III, and GRANT George L. Childs, Jr.'s motion to dismiss Count VII. We also DENY the Rule 12(e) motion.

### I. Count I—Negligence

Count I of the Verified Complaint alleges that the defendants "failed, neglected and refused to discharge properly their duties as directors and officers of the Bank, and negligently failed, neglected and refused to exercise that degree of care, skill, diligence, and good faith, and obedience to law which persons similarly situated would have exercised," and that "as a direct and proximate result of defendant's negligence, bad faith and mismanagement, the Bank incurred substantial losses and impairment of its assets." *See* Verified Complaint at ¶¶ 60, 61.

 Directors and officers of a corporation, as corporate fiduciaries, owe a duty to use "due care" in conducting the affairs of the corporation. *See Hanson Trust PLC v. SCM Acquisition, Inc.*, 781 F.2d 264, 273–74 (2d Cir.1986). "Due care" is the type of care that an ordinary prudent person in a like position would exercise under similar circumstances. In order to define what constitutes the type of care required of a corporate

---

1. Morgan filed a motion to dismiss on January 29, 1992. Gonzalez–Gorrondona and Childs joined in a motion to dismiss on January 31, 1992, and filed a modification on March 2, 1992. Chamberlain adopted Morgan's memorandum of law. *See* Chamberlain Motion at 3. Schneider incorporated the memoranda of law filed by Morgan, Gonzalez–Gorrondona, Childs and Chamberlain. *See* Schneider Motion at 5. Shevin filed a notice of supplemental authority concerning the motions to dismiss on March 5, 1992. Raney incorporated Morgan's memorandum of law and Shevin's notice of supplemental authority. Walden incorporated a motion to dismiss in his answer of January 30, 1992, without submitting an accompanying memorandum of law. Davis, O'Connell and Toxey answered the Verified Complaint, and have not filed any motions to dismiss. Oral argument on the motions was heard on July 1, 1992. Pursuant to the Court's direction, the parties submitted further briefing on the issue of the retroactive application of FIRREA on January 20, 1993.

director or officer, the law has devised the concept of varying "degrees of negligence" corresponding to the requisite "degrees of care." *See* W. Page Keeton et al., *Prosser and Keeton on Torts* 209 (5th ed. 1984). A claim sounding in simple negligence alleges a violation of "ordinary care." Ordinary care requires directors and officers to exercise customary diligence, intelligence, and judgment in managing corporate business. *See* 3A Fletcher's Cyclopedia Corporations § 1035. A claim sounding in "gross negligence" asserts the lack of even slight care. *See, e.g., Leite v. City of Providence*, 463 F.Supp. 585, 591 (D.R.I.1978) (distinguishing ordinary and gross negligence in that "one requires only a showing of unreasonableness while the other demands evidence of near recklessness or shockingly unjustified and unreasonable action").

> [Gross negligence] has been described as a failure to exercise even that care which a careless person would use. Several courts, however, dissatisfied with a term so nebulous, and struggling to assign some more or less definite point of reference to it, have construed gross negligence as requiring willful, wanton, or reckless misconduct, or such utter lack of care as will be evidence thereof—sometimes on the ground that this must necessarily have been the intent of the legislature.

Prosser, *supra* at 212 (footnotes omitted). *See generally Smith v. Van Gorkom*, 488 A.2d 858 (Del.1985) (finding directors "grossly negligent in approving the 'sale' of the Company upon two hours' consideration, without prior notice, and without exigency of a crisis or an emergency").

■ Also pursuant to their fiduciary relationship to the corporation, directors and officers owe a duty of loyalty (itself often called the "fiduciary duty" as opposed to the "duty of care"). The duty of loyalty is distinct from but closely intertwined with the duty to exercise due care, and can best be distinguished as the duty to avoid fraud, bad faith, usurpation of corporate opportunities and self-dealing. *See, e.g., Hanson Trust*, 781 F.2d at 274; *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928) (Cardozo, J.).

■ First, Defendants argue that to the extent that the FDIC's complaint alleges any claims sounding in simple negligence, those claims must be dismissed. Their argument is that Section 2[11](k) of the Federal Deposit Insurance Act, added by section 212(A) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (August 9, 1989) (codified at 12 U.S.C. § 1821(k)), enacts a heightened nationwide standard of liability for directors and officers of federally insured banks, such that any claims which allege a dereliction of duty less than gross negligence are insufficient as a matter of law. In particular, Defendants argue that § 1823(k) permits such suits against directors and officers of federally insured banks *only* for gross negligence, recklessness, or intentional torts, and thereby displaces any federal common law and pre-empts any state common or statutory law to the contrary. Defendants thus ask this Court to dismiss those portions of the complaint which state claims sounding in simple negligence, and to require the FDIC to bear the greater burden at trial of proving gross negligence on the part of the Defendants.

Plaintiff counters that § 1823(k) of FIRREA permits liability for *lesser* wrongful conduct, such as ordinary negligence. Claims for ordinary (simple) negligence and breach of fiduciary duty, the FDIC contends, exist under the federal common law. Further, Plaintiff argues, by virtue of the Supremacy Clause, the federal common law supersedes any state law providing for more relaxed standards where the two conflict.

Resolution of these arguments rests on our construction of § 1821(k) of FIRREA. That provision reads in pertinent part:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action [by the FDIC] for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of

the Corporation under other applicable law.

12 U.S.C. § 1821(k) (1989). We decline to read this statute as erecting a national standard of gross negligence. Instead, we hold that § 1821(k) of FIRREA displaces any conflicting pre-existing federal common law and pre-empts state statutory or judge-made law only to the extent that such state law protects bank directors and officers against claims alleging gross negligence, recklessness or intentional torts committed against the corporation.

At the outset, we observe the stated purposes of the statute:

> To strengthen the enforcement powers of Federal regulators of depository institutions [and to] strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors.

P.L. 101–73, § 101(9) and (10). *See also* H.R.Rep. No. 101–54(I), *reprinted in*, 1989 U.S.C.C.A.N. 86, 107 (1989). Defendants argue that the first sentence of this section establishes a national standard of gross negligence, and in doing so, totally preempts state law and displaces federal common law. In response, the FDIC points to the "savings clause." The FDIC maintains that "other applicable law" governing director and officer liability, although silent as to whether it refers to federal or state law, refers to federal common law in this case. In support of this position, the FDIC argues that federal common law provides for director and officer liability based on simple negligence, citing *Briggs v. Spaulding*, 141 U.S. 132, 152, 165, 11 S.Ct. 924, 931, 935, 35 L.Ed. 662 (1891) and *Bowerman v. Hamner*, 250 U.S. 504, 511–12, 39 S.Ct. 549, 552, 63 L.Ed. 1113 (1919). The FDIC urges further that federal common law should be applied since federally insured banks, subject to extensive federal regulation, mandate the application of a uniform body of federal law. Moreover, the FDIC argues, where state law conflicts, e.g., by prohibiting claims in simple negligence against bank directors and officers, the Supremacy Clause dictates that the federal law govern.

### A. *Federal Claims*

#### 1. *Federal Common Law Claims for Negligence*

To begin, we are not fully convinced that precedent supports the position that the federal common law provides a cause of action for breach of the duty of care by officers and directors of federally insured depository institutions.

The 1891 Supreme Court decision in *Briggs v. Spaulding, supra,* described a cause of action for negligence against the directors of a federally chartered bank:

> In any view the degree of care to which these defendants were bound is that which ordinarily prudent and diligent men would exercise under similar circumstances.... Without reviewing the various decisions on the subject, we hold that directors must exercise ordinary care and prudence in the administration of the affairs of a bank, and that is something more than officiating as figure-heads. They are entitled under the law to commit the banking business, as defined, to their duly-authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of knowledge of wrongdoing, if that ignorance is the result of gross inattention....

*See Briggs,* 141 U.S. at 152, 165–66, 11 S.Ct. at 931, 935-6. Later, the Supreme Court reiterated this principle: " 'Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business and to exercise reasonable control and supervision of its officers.' " *Bowerman v. Hamner,* 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113 (1919) (quoting *Martin v. Webb,* 110 U.S. 7, 15, 3 S.Ct. 428, 433, 28 L.Ed. 49). The quoted excerpts from *Briggs* and *Bowerman,* however, do not definitively create a federal common law claim as opposed to being grounded in a state law claim. Neither case turned on such a distinction, and, although both cases involved federally chartered banks, making the distinction between federal and state common law was not of

paramount importance in the pre-*Erie* era. Moreover, in both cases the Supreme Court focused on deciding that directors could not avoid their duty to be diligent by delegating responsibility to executive officers, rather than determining what strain of common law engendered that duty. Thus, reading these excerpts as creating a *federal* common law cause of action takes them somewhat out of context. *Cf. FDIC v. Berry*, 659 F.Supp. 1475, 1479–80 (E.D.Tenn.1987) (holding that the duty of reasonable care on the part of bank directors was not "transferred" from the directors to the FDIC when the FDIC had performed examinations of the bank pursuant to the requirements of the Federal Deposit Insurance Act and the directors had relied on the examinations, and citing *Briggs* and *Bowerman* for "general definitions of the duties required by the officers and directors of a bank").

Similarly, the FDIC's citation of *FDIC v. Kyriakedes*, 1988 WL 251977 at *2 (S.D.Fla. March 15, 1988) (Nesbitt, J.), does not support the view that the federal common law creates a negligence claim. That case cited the following excerpt from the decision of the former Fifth Circuit in *Davis v. McFarland*, 15 F.2d 612, 613 (5th Cir.1926):

> The asserted cause of action now in question was not made one arising under the laws of the United States by the alleged facts that the negligence and mismanagement of the sued directors in the conduct of the affairs of the bank constituted a violation of the oaths they took pursuant to the statute ... requiring that "each director, when appointed or elected shall honestly administer the affairs of such association," etc. If the asserted liability existed, it arose, not as a result of a violation of their oaths by the directors or of a breach of any federal law, but as a result of the breach by the directors of their common-law duty to be honest and diligent in the administration of the affairs of the bank. The existence of liability for a breach of that common-law duty is not dependent upon the prescribed oath having been taken. That liability is one created by laws not enacted by Congress. *Bowerman v. Hamner*, 250 U.S. 504, 39 S.Ct. 549.

The Fifth Circuit in *Davis v. McFarland* did *not* decide that because the "liability is one created by laws not enacted by Congress" that the liability *was* created by federal common law. Rather, the opinion affirmed a dismissal for lack of jurisdiction based on the absence of a federal question. Thus, *Davis v. McFarland*—which involved a suit against a "national banking association"—is more properly cited for the proposition that any common law claims for negligence against bank directors and officers arise as a matter of state and *not* federal common law.

Furthermore, two district courts have expressly decided that a cause of action for negligence against the directors and officers of federally insured banks does not fall within the province of federal common law. In *FSLIC v. Kidwell*, 716 F.Supp. 1315 (N.D.Cal.1989), *vacated in part on other grounds sub nom. Eureka Fed. Sav. and Loan Ass'n v. Kidwell*, 937 F.2d 612 (9th Cir.1991), the district court held that there was no federal common law cause of action for negligence of officers and directors of federal savings and loan institutions: "The federal interest in uniform regulation of savings and loan associations supports recognition of a federal common law cause of action for breach of fiduciary duty, but not for negligence." *Id.* at 1317. Similarly, *First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128, 1131 (D.Hawaii 1983), recognized a federal common law cause of action for breach of fiduciary duty, but expressly held that there is no federal common law claim for negligence. The district court found that the "federal interest in uniform regulation of [federally insured] savings and loan associations supports recognition of a federal common law cause of action for breach of fiduciary duty," but regarding the duty of care decided: "Negligence is an area traditionally left to the state courts. There is no interest in national uniformity which would be served by the creation or application of any federal decisional law. Nor is any federal statute applicable or relevant. Therefore this court declines to recognize a federal common law cause of action for negligence." *Id.* at 1132, 1131. *See also AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1372–74 (S.D.Fla.1991)

(Hoeveler, J.) (declining to find a federal common law claim for breach of fiduciary duty, permitting suit only under state common law principles, and disagreeing with *Kidwell's* finding of a federal common law claim for breach of fiduciary duty).

Moreover, in light of the stated purpose of FIRREA noted above—of *strengthening* the FDIC's enforcement powers and to increase the civil sanctions for S & L mismanagement[2]—the enactment by § 1821(k) of a gross-negligence-or-higher *federal* standard (where state law required recklessness or more) would run counter to that stated purpose if the FDIC already had a federal common law claim for ordinary negligence in its arsenal.

We need not decide this question, however, since we find that section 1821(k) would displace any federal common law claims for negligence, and that section 1821(k) applies retroactively.

### 2. *FIRREA Displaces the Federal Common Law Claim for Negligence*

■ We find that Congress' enactment of § 1821(k) of FIRREA displaces any federal common law right that may have existed on the part of the FDIC to bring a claim sounding in simple negligence against directors and officers of failed thrifts. *Accord, FDIC v. Miller,* 781 F.Supp. 1271 (N.D.Ill.1991). Our conclusion is based on two grounds.

■ First, basic principles of statutory construction require that a statute should be interpreted in a way that gives effect to all of its provisions. *See United States v. Menasche,* 348 U.S. 528, 538–9, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955). The FDIC's argument that the savings clause preserves a federal common law right to sue under a simple negligence theory would nullify the first sentence of § 1821(k). Should such a cause of action continue to exist sounding in simple negligence the language that "[a] di-

rector or officer ... may be held personally liable ... for gross negligence ... or ... a greater disregard of a duty of care" would be rendered unnecessary surplusage. Such generous applications of the judicial eraser are to be avoided.

Second, as the Supreme Court counseled in *City of Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), "'we start with the assumption' that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of law." *Id.* at 317, 101 S.Ct. at 1792, quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). As *City of Milwaukee* points out,

> [F]ederal common law is "subject to the paramount authority of Congress." [Citation omitted]. It is resorted to "[i]n absence of an applicable Act of Congress," [citation omitted] and because the Court is compelled to consider federal questions "which cannot be answered from federal statutes alone." [Citation omitted]. Federal common law is a "necessary expedient," [citation omitted] and when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears.

*Id.* at 314, 101 S.Ct. at 1791. Where Congress has "spoke[n] directly to a question" previously addressed by federal common law, Congress need not "affirmatively proscribe[ ]" the use of federal common law" in order for the new scheme to displace it. *Id.* at 315, 101 S.Ct. at 1791. The determination of "whether a previously available common-law action has been displaced by federal statutory law involves an assessment of the scope of the legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law." *Id.* at 315 n. 8, 101 S.Ct. at 1792 n. 8.[3] Prior

---

**2.** The stated purpose of FIRREA is
> To strengthen the enforcement powers of Federal regulators of depository institutions [and to] strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors.

See H.R.Rep. No. 101–54(I), *reprinted in,* 1989 U.S.C.C.A.N. 86, 107 (1989).

**3.** Here, the scope of FIRREA, like the scope of the Amendments to the Federal Water Pollution Control Act at issue in *City of Milwaukee,* "establish[es] a comprehensive regulatory program supervised by an expert administrative agency." *Id.* 451 U.S. at 317, 101 S.Ct. at 1792. As the legislative history proclaims, "[FIRREA] begins a

to the enactment of § 1823(k), Congress had not legislated on the scope of claims brought by the FDIC against directors and officers of failed savings and loan associations. In doing so, Congress "spoke directly to the question" of the level of negligence required to sustain such a cause of action. Judicial creation of a negligence cause of action which would write § 1821(k) out of the United States Code is beyond the powers of this Court. *See Miller*, 781 F.Supp. at 1275; *see also Kidwell*, 716 F.Supp. at 1317 ("In general, federal common law should be recognized sparingly when Congress has created an integrated scheme of regulations and remedies.").

Contrary to the FDIC's characterization of the caselaw supporting its position, no published case has held that the savings clause of § 1823(k) preserves *federal common law* claims. Only one case cited by the FDIC, a district court opinion which construed the savings clause broadly, has held that a federal common law claim for simple negligence withstood a motion to dismiss. *See FDIC v. Nihiser*, 799 F.Supp. 904 (C.D.Ill.1992). Of the published opinions cited by *Nihiser*, and by the FDIC in its memorandum to this court, not one was confronted with a *federal common law* claim; thus, none are directly on point. *See FDIC v. Canfield*, 967 F.2d 443 (10th Cir.1992) (en banc) (holding that Utah state common law claim for simple negligence was not pre-empted); *FDIC v. Isham*, 777 F.Supp. 828 (D.Colo.1991) (finding that FDIC can pursue claim under state law); *FDIC v. Williams*, 779 F.Supp. 63, 64 (N.D.Tex.1991) ("This court is not persuaded that FIRREA preempts the state causes of action."); *FDIC v. Fay*, 779 F.Supp. 66, 67 (S.D.Tex.1991) (not distinguishing between federal and state common law in permitting a claim "other than for gross negligence"); *FDIC v. Burrell*, 779 F.Supp. 998, 1003

(S.D.Iowa 1991) ("Therefore, Iowa common law (simple negligence) should be applied."); *FDIC v. Black*, 777 F.Supp. 919, 922 (W.D.Okla.1991) (concluding that "Congress intended 'other applicable laws' to include both federal and state laws" in order to reach its holding that "the final sentence preserves the statutory and *common law of states*, like Oklahoma, which allow civil actions based on ordinary negligence") (emphasis added); *FDIC v. Haddad*, 778 F.Supp. 1559, 1567 (S.D.Fla.1991) ("Such construction mandates that Section 1821(k) be read to preempt *state* common law claims against officers or directors of a failed bank which rises to the level or [sic] gross negligence or higher but not to preempt those claims against officers or directors for conduct which rises to simple negligence.") (emphasis added); *FDIC v. McSweeney*, 772 F.Supp. 1154, 1159 (S.D.Cal. 1991), *aff'd*, 976 F.2d 532 (9th Cir.1992) (permitting a negligent breach of fiduciary duty suit under California law to proceed, reasoning that "it is more sensible to read the second sentence as a reference to all other applicable state and federal law"); *FDIC v. McSweeney*, 976 F.2d 532, 541 (9th Cir.1992) ("We hold that the plain language of FIRREA allows the FDIC to bring claims against former officials of failed financial institutions premised on a lesser degree of culpability than gross negligence, where authorized by state law.").

Thus, we find that section 1821(k) would displace any federal common law causes of action for negligence against directors and officers of failed federally insured banks, to the extent that such claims were known to the federal common law.

B. *State Law Claims for Ordinary Negligence Survive*

▇▇▇ We reject, however, Defendants' argument that § 1821(k) pre-empts state law

---

new era for insured institutions and their regulators." H.R.Rep. No. 101–54(I) at 291, *reprinted in* 1989 U.S.C.C.A.N. at 87. *See also* 135 Cong.Rec. H2563 (daily ed. June 14, 1989) (quoting Rep. Ridge as stating that FIRREA is "bold and comprehensive" and "the most important legislation concerning our financial system since Congress created this Nation's financial safety net with the Federal Reserve Act of 1913 and the Banking Act of 1933"). We need not, and do

not, find that FIRREA completely obliterates all federal common law in the field of banking regulation. *Cf. Gunter v. Hutcheson*, 674 F.2d 862, 872–73 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (applying federal common law *D'Oench Duhme* doctrine alongside § 1823(e)). *See also* Order on Motions to Dismiss, *Bender v. Centrust*, 833 F.Supp. 1525 (1992). Our ruling is confined to § 1821(k).

where such state common or statutory law provides for director and officer liability for breaching the duty of ordinary care, i.e., less than gross negligence. In doing so, we adopt the reasoning of the 10th Circuit in *FDIC v. Canfield, supra. Accord, Isham, supra; Williams, supra; Fay, supra; Burrell, supra; Black, supra; McSweeney, supra.*

In *Canfield,* the FDIC sued the former officers and directors of a failed bank for breach of fiduciary duty, specifically alleging breach of the duty of care by simple negligence. *See FDIC v. Canfield,* 763 F.Supp. 533, 535 (D.Utah 1991), *rev'd* 967 F.2d 443 (10th Cir.1992). Utah common law authorizes such suits for personal liability for ordinary negligence. *Id.* The district court held that the first sentence of § 1821(k) pre-empted state law and adopted a national standard of liability for gross negligence or a higher degree of aggravated fault; the court held further that the phrase "other applicable law" in the savings clause referred to "other sections of FIRREA." *Id.* at 535, 537.

The Tenth Circuit reversed, finding that such a reading was "contrary to the plain language of section 1821(k)." *Canfield,* 967 F.2d at 445. The Circuit construed the word "may" in the first sentence of the section to indicate that

even where state law under which the FDIC is authorized to bring suit otherwise limits actions against officers and directors to *intentional* misconduct, an officer or director may nevertheless be held liable for gross negligence. In states where an officer or director is liable for simple negligence, however, the FDIC may rely, as it does in this case, on state law to enable its action.

*Id.* at 446. The Circuit reasoned that adopting the defendants' position would require reading the word "may" to mean "may only," and declined to disturb the text. *Id.* Further, the Circuit found the interpretation embraced by the district court to be a far less compelling reading, since it suggests that the first sentence and the savings clause mean the same thing, the latter thus would "serve[ ] no independent purpose." *Id.* at 448. Significantly, the Circuit noted that

[t]he statute's reliance on state law for its definition of gross negligence directly refutes the proposition that FIRREA establishes a national standard of liability for officers or directors. State law definitions of gross negligence differ. Indeed "there is ... no generally accepted meaning [of gross negligence]." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts 34, at 212 (5th ed. 1984). These differences mean that the statute cannot possibly, even without the last sentence, create a national standard of liability.... Under section 1821(k), states may require that the FDIC show "gross negligence," under the state definition, in order to establish an officer or director's personal liability. They simply may not require greater culpability.

*Id.* at 447.

The Supreme Court has cautioned that the analysis in determining whether a federal statute has displaced federal common law differs from the analysis in determining whether the statute pre-empts state law. *See City of Milwaukee,* 451 U.S. at 316, 101 S.Ct. at 1792. The latter requires "evidence of a clear and manifest purpose" before finding state law pre-empted. *Id.* The Circuit in *Canfield* pointed out that " 'field pre-emption cannot be inferred,' " *Canfield,* 967 F.2d at 448 (quoting *Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, ——, 111 S.Ct. 2476, 2486, 115 L.Ed.2d 532 (1991)), that the first sentence explicitly limited its scope to pre-empt only state law which installed greater protections for corporate directors and officers, and that the existence of the savings clause "makes unreasonable any inference that the entire field was the target" of the provision. *Id.* at 448.

Defendants argue that the following excerpt from the House Conference Report indicates an intention to totally pre-empt state law. *See FDIC v. Swager,* 773 F.Supp. 1244, 1248 (D.Minn.1991) (finding that § 1821(k) establishes a federal standard of liability). That commentary reads:

Title II preempts state law with respect to claims brought by the FDIC in any capacity [sic] against officers or directors of an insured depository institution. The pre-

emption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.

H.R.Conf.Rep. No. 101–222, 101st Cong., 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 432, 437.

We are not persuaded that this excerpt, nor any other taken alone and divorced from context, is the definitive statement of Congress' intent as to the meaning of § 1821(k). In any event, the analysis of § 1821(k) prepared before the final Senate vote directly contradicts the House Conference Report:

> This subsection does not prevent the FDIC from pursuing claims under State law or under other applicable Federal law, if such law permits the officers of directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract or breach of fiduciary duty.

135 Cong.Rec. S6912 (June 19, 1989); S.Rep. No. 101–19, 101st Cong. 1st Sess. 318 (1989). The House version of the savings clause in § 1821(k) (which was the final version) was substantially identical to the one passed by the Senate. *See Isham,* 777 F.Supp. at 831–2. The Senate's savings clause referred to the FDIC's rights "as they existed immediately prior to the enactment of the FIRREA Act." We find no significant difference in effect between the two versions.

Thus, should state law provide for a cause of action in simple negligence against corporate officers and directors, § 1821(k) will permit the FDIC to prosecute such a claim.

## C. *Florida Law of Director and Officer Liability*

■ Caribank was incorporated under the laws of Florida, and thus we look to the Florida law relating to this cause of action to see whether it permits a claim for simple negligence. The Florida legislature revised its law governing liability of corporate officers and directors, effective July 1, 1987. *See* Fla.Stat. §§ 607.1645, 607.165 (West Supp.1988), *repealed and re-enacted as* Fla. Stat. §§ 607.0830, 607.0831 (West Supp.1992).

The standard of conduct required by Florida law prior to that change was ordinary care. The Florida Supreme Court discussed that standard in one of the only cases in Florida to directly address the issue:

> An officer or director occupies a quasi-fiduciary relation to the corporation and the existing stockholders. He is bound to act with fidelity and the utmost good faith. He is bound to be loyal to his trust. In accepting the office he impliedly agrees and undertakes to give the corporate enterprise the benefit of his *best care and judgment* and to exercise the powers conferred on him solely in the interest of the corporation and the stockholders.... Officers and directors of a corporation are liable for damages to the corporation which result from a breach of their trust, a violation of authority or neglect of duty.

*Flight Equipment & Engineering Corp. v. Shelton,* 103 So.2d 615, 626–627 (Fla.1958) (emphasis added); *see also Haddad,* 778 F.Supp. at 1567 ("[The] position that in general there is no cause of action against corporate directors under Florida law for 'simple negligence' is unfounded."); *but see* 1987 Fla. Laws 1685, ch. 245, § 1(2) (June 30, 1987) ("The Legislature further finds that the case law of the state does not adequately delineate the liability of those serving on governing boards, and that such delineations through the clarification of the appropriate standard of care due an individual and a corporation by a member of a governing board is essential in encouraging the continued service of qualified persons on such governing boards.").

The 1987 revisions require a corporate director, *inter alia,* to

> discharge his duties ...

> (a) In good faith;

> (b) With the care an ordinarily prudent person a like position would exercise under similar circumstances; and

> (c) In a manner he reasonably believes to be in the best interests of the corporation.

Fla.Stat. § 607.0830 (West 1993). The statute will not permit liability for violation of

the duties under the standard of care, unless the breach constitutes among other things, a violation of criminal law, a transaction which amounts to self-dealing, or recklessness, conscious disregard for the best interests of the corporation, or willful misconduct. *See* Fla. Stat. § 607.0831 (West 1993).[4] We find that the Florida statute insulates corporate directors and officers from conduct amounting to gross negligence, and permits liability only for greater derelictions of the duty of care.

The Florida legislature indicated explicitly that the more lenient standard for evaluating the conduct of directors and officers would be applied prospectively, to conduct occurring after its enactment:

> [The new provision] shall take effect on July 1, 1987 ... and shall apply to all causes of action accruing on or after the effective date of this act. Nothing in this act shall effect the validity of any bylaw agreement, vote of shareholders or disinterested directors, or otherwise pursuant to § 607.014 F.S. [relating to indemnification of officers and directors] before the effective date of this act.

1987 Fla.Law 329, 351, ch. 245, § 13 (June 30, 1987). In sum, prior to July 1, 1987, the law of Florida imposed liability on corporate directors and officers for simple negligence, and after that date, Florida imposed liability only for acts constituting more than gross negligence.

■ In deciding whether the pre–1987 standard or the post–1987 standard of conduct applies in the instant case, we observe that as with any court-created or statutory negligence law, the Florida judicial and statutory constructions of the standard of care owed to a corporation by its directors and officers, by their very existence inform and shape the behavior of those corporate actors. The conduct complained of here transpired between February or March 1983 and December 9, 1988. *See* Verified Complaint at ¶¶ 24–50. We hold that for purposes of determining the applicability of the two phases of the Florida corporate negligence statute, the cause of action "accrued" at the time of that conduct. The Defendants are held liable for ordinary negligent disregard of their duty of care for their conduct and decisions before July 1, 1987.

■ Contrary to Defendant's assertions, however, dating the accrual of the action to the time of conduct will not begin the running of the statute of limitations at that time. "Generally the statute is tolled while a corporate plaintiff continues under the domination of the wrongdoers. In other words, the statute does not begin to run until they cease to be directors." 3A Fletcher's Cyclopedia Corporations, § 1306.2 (1986). The analysis of when an action "accrues" for purposes of determining whether the statute of limitations has run differs from determining when the cause "accrues" in the sense of "arises" under the purview of a statute. *See Meehan v. Celotex Corp.*, 466 So.2d 1100, 1107 (Fla.

---

4. Florida Statutes § 607.0831 provides in pertinent part:

**607.0831. Liability of Directors**

(1) A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision, or failure to act, regarding corporate management or policy, by a director, unless:

(a) The director breached or failed to perform his duties as a director; and

(b) The director's breach or failure to perform, those duties constitutes:

1. A violation of the criminal law, unless the director had reasonable cause to believe his conduct was unlawful. A judgment or other final adjudication against a director in any criminal proceeding for a violation of the criminal law estops that director from contesting the fact that his breach, or failure to perform, constitutes a violation of the criminal law; but does not estop the director from establishing that he had reasonable cause to believe that his conduct was lawful or had no reasonable cause to believe that his conduct was unlawful;

2. A transaction from which the director derived an improper personal benefit, either directly or indirectly;

3. A circumstance under which the liability provisions of s. 607.0834 are applicable;

4. In a proceeding by or in the right of the corporation to procure a judgment in its favor of by or in the right of a shareholder, conscious disregard for the best interest of the corporation, or willful misconduct; or

5. In a proceeding by or in the right of someone other than the corporation or a shareholder, recklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property.

Fla.Stat. 607.0831 (West 1993).

3d DCA 1985). The former inquiry is more accurately phrased in terms of whether the running of the statute of limitations is "tolled" or "suspended" despite the action having "arisen" earlier. Florida recognizes the "discovery rule" that "regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights." *Creviston v. General Motors Corp.,* 225 So.2d 331, 334 (Fla.1969); *see also, Flanagan v. Wagner, Nugent, et. al.,* 594 So.2d 776, 778 (Fla. 4th DCA 1992).

In the corporate context, this concept has been called the "adverse domination theory" which reasons that "as long as a bank is dominated by the same wrongdoers against whom a cause of action exists, the statute of limitations is tolled." *FDIC v. Hudson,* 673 F.Supp. 1039, 1042 (D.Kan.1987). The rationale of the theory is as follows: (1) wrongdoers cannot be expected to bring an action against themselves; (2) the wrongdoer's control puts the corporation in the position of a cestui of a trust and unable to make an adverse claim; and (3) the wrongdoer's control results in the concealment of causes of action from those who otherwise might be able to protect the corporation. *See FDIC v. McAtee,* 1988 WL 248044 at *4 (D.Kan.1988); *FDIC v. Williams,* 599 F.Supp. 1184, 1193–4 (D.Md.1984); *FDIC v. Bird,* 516 F.Supp. 647, 650 (D.P.R.1981). We find that, although the cause of action can be said to "accrue" at the time of the underlying conduct, the statute of limitations was tolled until the FDIC became receiver for Caribank after it was closed by the Florida Comptroller on December 9, 1988. *See also FDIC v. Cherry, Bekaert & Holland,* 742 F.Supp. 612, 616–17 (M.D.Fla. 1990).

D. *FIRREA Applies Retroactively*

██ This lawsuit was brought in December 1991—after the enactment of FIRREA on August 9, 1989—and seeks to hold the former directors and officers of now-defunct Caribank liable for conduct which took place prior to the enactment of FIRREA. Upon the observation that the voluminous and continuous briefing on the instant motions did not address the question of whether FIRREA could be applied to pre-enactment conduct, the Court directed the parties to submit memoranda on the question. Both sides now urge that FIRREA should be applied retroactively.[5] We agree.

Several courts, presented—as is this one—with post-enactment FDIC actions against banks where the complained-of conduct occurred pre-enactment, effectively applied FIRREA retroactively in ruling that FIRREA does not pre-empt state law claims for simple negligence. None of these cases explicitly discussed retroactivity. *See e.g., FDIC v. McSweeney,* 976 F.2d 532 (9th Cir. 1992); *FDIC v. Miller,* 781 F.Supp. 1271 (N.D.Ill.1991); *FDIC v. Isham,* 777 F.Supp. 828 (D.Colo.1991). *Cf. FDIC v. Haddad,* 778 F.Supp. 1559 (S.D.Fla.1991) (finding that FIRREA could not be applied retroactively to support the FDIC's claim for gross negligence *filed under* § 1821(k), but then analyzing the FDIC's state law simple negligence claims and finding them not preempted, without regard to the court's earlier discussion of retroactivity).

The presumption of retroactivity announced in *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) is the rule in the Eleventh Circuit by virtue of the recent decision in *Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370, 1373 (11th Cir.1992) (declining to follow the apparently conflicting presumption of prospectivity pronounced in *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), and holding that "we will continue to apply the *Bradley* analysis unless

---

5. More exactly, the FDIC argued for retroactivity, unless the Court found that "§ 1821(k) could somehow preclude the FDIC from pursuing vested rights it acquired from Caribank via the receiver," in which case the FDIC would argue that FIRREA is not retroactive. *See* FDIC's Memorandum Regarding Retroactivity, at 9 (Jan. 20, 1992). The vested rights the FDIC claims are its right to pursue state and federal common law claims for ordinary negligence. Since the existence of a federal common law cause of action is questionable, and we have found that in any event it would be displaced by FIRREA, it is unclear exactly what position the FDIC would advocate under this permutation.

and until directed otherwise by the United States Supreme Court or the Eleventh Circuit en banc"). *Bradley* requires us to "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016.

One district court in this district refused to apply § 1821(k) retroactively in light of "legislative history to the contrary." *See Haddad*, 778 F.Supp. at 1564. That court relied on the analysis of *FDIC v. Cherry, Bekaert & Holland*, 742 F.Supp. 612, 616 (M.D.Fla. 1990) (interpreting § 212(a) of FIRREA), and its discussion of the comments of U.S. Rep. Henry B. Gonzalez of Texas suggesting prospective application of FIRREA.[6] Whatever weight such comments may have, the Eleventh Circuit Court of Appeals in *FDIC v. 232, Inc.*, 920 F.2d 815 (11th Cir.1991), has since disposed of this question in finding that FIRREA's jurisdictional provisions applied retroactively, relying on a *Bradley* analysis:

> We must now address whether it is appropriate to apply FIRREA to this case despite its enactment while the action was pending. The text and legislative history are silent on this matter. The Supreme Court, however, has set forth the rule that a court is to apply the law in effect at the time it renders its decision unless manifest injustice would result.

*Id.* at 818 (citing *Bradley*). Although *232, Inc.* involved the jurisdictional provisions of FIRREA and not § 1821(k), the pronouncement of the Court of Appeals that "[t]he text and legislative history are silent on this matter" is binding on this Court and precludes us from now relying on Representative Gonzalez's comments.[7]

As such, we must determine whether "manifest injustice" would result, which depends on three factors: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019.

The first factor supports the retroactive application of FIRREA, and the analysis of that factor by *232, Inc.* is equally applicable to this case:

> This is not a case between private individuals. This case involves an agency of the federal government and an issue of national concern. According to a House Report on the subject of FIRREA,
>
> > The interests of the American taxpayer demand an expedited resolution to the monumental problems involved with the unprecedented costs of dealing with hundreds of insolvent thrifts and the orderly disposition of the assets of these failed institutions.
>
> H.R.Rep. No. 54, 101st Cong., 1st Sess., pt. 1, at 308 (1989), 1989 U.S.C.C.A.N. 86, 104.

6. Rep. Gonzalez, the sponsor of FIRREA, when asked about the effect of the bill on particular pending litigation (suits involving banks challenging alleged wrongful denial of applications to leave FSLIC), replied, "[A]s far as I know, there is no retroactive language in any part of the bill that would have any impact one way or the other on pending litigation." 135 Cong. Rec. H2748 (Daily Ed. June 15, 1989). The *Cherry Bekaert* court also relied on similar comments by Representative Solomon Ortiz: "The powers set forth in this bill are, in many respects, new, and there is no intent that such powers be applied to receiverships that have been established prior to the enactment of this bill." 135 Cong. Rec. H5003 (Daily Ed. August 3, 1989). *Cf. MCorp v. Clark*, 755 F.Supp. 1402, 1417 n. 33 (dismissing Ortiz's comments as unpersuasive since he "was not a member of the major committees that considered FIRREA").

7. *Haddad* was decided on July 26, 1991, *after* the Eleventh Circuit's opinion in *232, Inc.*, which was issued on January 7, 1991. We have no

reason to believe that the Eleventh Circuit was unaware of the same legislative history relied on by *Haddad* and cited prior to *232, Inc.* by the district court for the Middle District of Florida in *Cherry Bekaert*. Although *232, Inc.* addressed a different provision of FIRREA, it did examine, cite to and quote from the general legislative history. *See 232, Inc.*, 920 F.2d at 818 (excerpting the House Report on FIRREA: "The interests of the American taxpayer demand an expedited resolution to the monumental problems involved with the unprecedented costs of dealing with hundreds of insolvent thrifts and the orderly disposition of the assets of these failed institutions. H.R.Rep. No. 54, 101st Cong., 1st Sess., pt. 1, at 308 (1989), U.S.Code Cong. & Admin.News 1989, pp. 86, 104."). *Haddad's* reliance on the legislative history here must be taken as being overruled by the Eleventh Circuit's comments in *232, Inc.*

*232, Inc.,* 920 F.2d at 818. Thus this case involves the "great national concerns" under *Bradley* that strongly support retrospective application. *See Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019.

The second factor examines whether the "[a]pplication of FIRREA .. infringe[s] on any substantive right" of the defendants. *232, Inc.,* 920 F.2d at 818. Section 1821(k) does not revoke any "unconditional rights upon which the parties relied." *See Baynes,* 976 F.2d at 1374 (citing *Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1574 (11th Cir.1990)). The function of section 1821(k) is more properly viewed as a remedial one, and "if statutory changes in the parties' rights are purely 'remedial' or procedural in nature, that fact weighs in favor of retroactive application." *Baynes,* 976 F.2d at 1374 (citing *United States v. Peppertree Apartments,* 942 F.2d 1555, 1561 (11th Cir.1991) (applying statutory amendment authorizing double damages retroactively, as the amendment was "remedial in nature"), *cert. granted and judgment vacated on other grounds sub nom. Bailes v. United States,* — U.S. —, 112 S.Ct. 1755, 118 L.Ed.2d 419 (1992)).

The third factor requires us to consider whether applying § 1821(k) retroactively unfairly imposes "a new and unanticipated obligation" on the defendants. *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021. We cannot say that the defendants enjoyed a *substantive right* to conform their conduct to any lesser standard of care that may have been provided under state law, assuming, *arguendo,* that there was no federal common law claim for ordinary negligence. *Cf. United States v. Fernandez–Toledo,* 749 F.2d 703, 705 (11th Cir.1985) (denoting right to pretrial release as a substantive right for purposes of *Bradley* second factor). Further, the argument that Defendants conformed their conduct by making corporate decisions with an eye toward the relaxed standards that state law may have provided is not persuasive for two reasons. First, the Defendants have never rebutted the FDIC's argument that there was a federal common law claim for ordinary negligence that the FDIC could have pursued pre-FIRREA, and instead relied on the argument that any federal common law was

displaced by FIRREA. *See* Gonzalez–Gorrondona Motion to Dismiss, at 4–11 (May 4, 1992, Docket Entry 153). Thus, any argument that they relied on the absence of an ordinary standard of care provided by the federal common law loses force. Second, assuming *arguendo* that there was no federal common law cause of action, and that Florida law after January 1, 1987 insulated them from liability for all but the most egregious misconduct—Defendants would still be liable for simple negligence under pre–1987 Florida law for their pre–1987 conduct, and any argument that they relied on post–1987 Florida law in conducting the bank's affairs with only the slightest degree of care "is not plausible and is outweighed by the great national concern" addressed by FIRREA. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.,* 721 F.Supp. 1247, 1256 (S.D.Fla. 1989). Simply put, the enactment of section 1821(k) "did not create such a substantial change in the standard of liability to justify a conclusion that the defendant[s] would have altered [their] conduct" upon FIRREA's enactment. *Id.* at 1255.

Accordingly, we must apply section 1821(k) retroactively.

### E. Standard of Care Applied to Count I

In light of this analysis, the following standards of care will be applied in Count I of this case: challenged corporate decisions on the part of the defendants that were made prior to July 1, 1987 will be subject to an ordinary standard of care under Florida common law; any misconduct alleged to have taken place after July 1, 1987 must be scrutinized according to the "gross negligence" standard of § 1821(k) of FIRREA, since the Florida statute, to the extent that it provides for liability only for conduct amounting to more than gross negligence, is pre-empted by section 1821(k), which applies retroactively.

### II. Count II—Breach of Fiduciary Duty

Count II asserts a blanket claim for "breach of fiduciary duty" against all the defendants for "engaging in acts of disloyalty and lack of care." The complaint does not

elaborate on the source of law for this cause of action, be it state or federal, common or statutory. Count II's alleged "lack of care" merely restates the negligence claim of Count I, and to that extent it is superfluous and should be stricken for the sake of clarity. To the extent that "acts of disloyalty" allege fraud, bad faith or self-dealing, Count II must be dismissed without prejudice to amend the complaint since even the most generous reading of the Verified Complaint reveals that *absolutely no facts* have been pled to support such claims. Should the FDIC decide to reallege this Count in an Amended Verified Complaint, the FDIC is directed to allege with specificity which legal duties arising out of the fiduciary relationship are alleged to have been breached.

### III. *Count III—Breach of Contract*

■ We agree with Defendants' argument that Count III of the FDIC's Verified Complaint should be dismissed because it fails to state a claim for breach of contract. Count III alleges that

> By reason of their relationship to the Bank as officers, directors and employees, and (as to the defendant directors) by reason of their oaths, each defendant had an express or implied contractual relationship with the Bank. Accordingly, each defendant had and owed the Bank contractual duties including, but not limited to, the duties of care, loyalty, diligence, prudence and good faith.

*See* Verified Complaint at ¶ 67. Count III states that the defendants' actions or omissions constituted breach of such duties.

■ First, as to the aspect of the breach of contract claim which is grounded in an alleged violation of the directors' oaths of office pursuant to 12 U.S.C. § 73, the law is well-settled that such a claim does not exist. *See Saker v. Community First Bank,* 837 F.2d 476 (6th Cir.1988); *Haddad,* 778 F.Supp. at 1564; *FDIC v. Dannen,* 747 F.Supp. 1357 (W.D.Mo.1990); *FDIC v. Kyriakedes,* 1988 WL 251977 (S.D.Fla.1988) (Nesbitt, J.); *FDIC v. McAtee,* 124 F.R.D. 662 (D.Kan.1988); *Fries v. Kyriakides,* No. 85–3722–CIV–HOEVELER, slip op. at 2 (S.D.Fla. Feb. 20, 1987); *Thompson v. Kerr,*

555 F.Supp. 1090, 1098 n. 9 (S.D.Ohio 1982). Notably, the FDIC did not even contest this argument in its Consolidated Response to the motions to dismiss. *See* Consolidated Response of the FDIC, at 47–48.

As to the aspect of the breach of contract claim grounded in an express or implied contract, we are usually hard-pressed to dismiss such a claim upon a motion to dismiss. The FDIC, however, has pled nothing indicating that an *express* contract—be it oral or written—ever existed.

■ As to the existence of an *implied* contract, the Court is aware that there is caselaw suggesting that contract claims may be implied from the fiduciary obligations of directors and officers of banks, for the purposes of permitting the FDIC to avail itself of the longer statute of limitations for contract, as opposed to tort claims. *See e.g., FDIC v. Former Officers & Directors of Metropolitan Bank,* 884 F.2d 1304 (9th Cir.1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). As discussed above, at least a portion of the negligence theory of the Verified Complaint is grounded on state law, and it is clear that Florida's economic loss rule prohibits a party from recovering economic damages in both tort and contract unless the tortious conduct alleged is separate and independent from the alleged contract. *See AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180, 181 (Fla.1987); *Florida Power & Light Co. v. Westinghouse Elec. Corp.,* 510 So.2d 899, 902 (Fla.1987). There is no indication in Count III that the contractual duties are anything but coterminous with the tort duties upon which the gravamen of the Verified Complaint is founded. *Cf. Amerifirst Bank v. Bomar,* 757 F.Supp. 1365, 1377–78 (S.D.Fla.1991). As such, the FDIC cannot travel on both a contract and a tort theory of recovery in this lawsuit, and must select one or the other avenue of relief.

Accordingly, we must dismiss Count III of the Verified Complaint. Should the FDIC decide to frame its claims as sounding in contract, and to abandon its tort theories of relief, it may seek leave to so amend the Verified Complaint.

## IV. Count VII—Against Childs for Restitution

■ Defendant Childs moves to dismiss Count VII which alleges that Childs was "unjustly enriched at the expense of the Bank as a result of. his wrongful conduct" and that the bonuses allegedly paid to him of at least $47,000 in 1985 and $42,500 in 1986 should not have been paid. Under Florida law, "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe,* 502 So.2d 71, 72 (Fla.3d DCA 1987) (citing *Liza Danielle, Inc. v. Jamko, Inc.,* 408 So.2d 735 (Fla.3d DCA 1982)). The FDIC has not argued that its remedy in tort is in any way inadequate, nor has it argued that the claim for restitution arises out of conduct distinct from that which it claims was tortious. *Circle Finance Co. v. Peacock,* 399 So.2d 81, 85 (Fla. 1st DCA 1981), *rev. denied,* 411 So.2d 380 (Fla.1981), cited by the FDIC in its Consolidated Response is not to the contrary, as that case does not stand for the proposition that restitution is a remedy at law. *Circle Finance* held only that a monetary award could be granted where the complaint sought only equitable relief in the form of rescission of a quitclaim deed and incidental damages, and the court denied rescission. The defendant in *Circle Finance* claimed that it was legally inconsistent for the trial court to deny the primary relief of restitution, but then to grant incidental damages. The Court of Appeals disagreed, stating that although the trial court may have found insufficient evidence of fraud to support a rescission of the deed, the court could have found that the Defendant had been compensated twice for the same mortgage indebtedness, and thus the court could appropriately direct the equitable relief of restitution. *See Circle Finance,* 399 So.2d at 84, 85 (noting "equitable remedy" for unjust enrichment is constructive trust).

Accordingly, Count VII for restitution against Childs must be dismissed.[8]

---

8. We observe that Counts V (against Raney), VI (against Davis), VIII (against O'Connell) and IX (against Toxey) also demand restitution against defendants named in the tort claims, but because no motions have been directed at these Counts, we decline to dismiss them at this time.

## V. The Business Judgment Rule

■ Defendants allege that the business judgment rule insulates their corporate decisions from being assailed by the FDIC. *See* Fla.Stat. § 607.0830 (West 1993); *see generally Cottle v. Storer Communications, Inc.,* 849 F.2d 570, 574 (11th Cir.1988) ("Under the business judgment rule, directors are presumed to have acted properly and in good faith, and are called to account for their actions only when they are shown to have engaged in fraud, bad faith, or an abuse of discretion."); *Smith v. Van Gorkom,* 488 A.2d 858, 873 (Del.1985) ("The business judgment rule applies when the directors have satisfied their duty to act in an informed and deliberate manner...."); *Joy v. North,* 692 F.2d 880, 886 (2d Cir.1982) ("The business judgment rule extends only as far as the reasons which justify its existence. Thus, it does not apply in cases, e.g., in which the corporate decision lacks a business purpose, ... is so egregious as to amount to a no-win decision, ... or results from an obvious and prolonged failure to exercise oversight or supervision."). We note first that "it is arguable that a court should not consider whether a defendant's conduct is protected by the business judgment rule on a motion to dismiss." *Bomar,* 757 F.Supp. at 1376. As the Verified Complaint alleges "bad faith and mismanagement," Verified Complaint at ¶ 61, specifically the failure to establish proper monitoring procedures, failure to supervise, failure to review recommendations, and abandonment of responsibility, among other things, the Verified Complaint sufficiently alleges conduct which falls beyond the ambit of the protections of the business judgment rule. *See Haddad,* 778 F.Supp. at 1567.

## VI. Motion to Dismiss for Vagueness or for More Definite Statement

■ We decline to dismiss on the grounds of vagueness under Fed.R.Civ.P. 12(b)(6), 9(f) or to require the FDIC to make a more definite statement under Fed. R.Civ.P. 12(e). The Rule 8(a) standard for sufficiency of a complaint is low. *Quality*

*Foods de Centro America v. Latin American Agribusiness Dev't Corp.,* 711 F.2d 989, 995 (11th Cir.1983). Under Rule 8(a), the complaint is sufficient if it is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The claim need not be pled with particularity and need only put claimant on notice as to the claim asserted against him and the relevant grounds. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). It should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts which will entitle it to relief." *Id.* at 45–46, 78 S.Ct. at 102; *Quality Foods,* 711 F.2d at 995. We think the Verified Complaint adequately puts each and every defendant on notice of the period during which the challenged loans were made, and of the conduct alleged to be tortious, sufficient to survive a motion to dismiss.

## VII.

In conclusion, it is hereby

ORDERED AND ADJUDGED THAT the Motions to Dismiss Count I of the Verified Complaint are DENIED but that the standards of care summarized in Section (I)(E), *supra,* shall govern the trial of Count I; the Motions to Dismiss Count II are GRANTED WITHOUT PREJUDICE for the FDIC to amend the Verified Complaint; the Motions to Dismiss Count III are GRANTED WITHOUT PREJUDICE for the FDIC to amend the Verified Complaint; the Motion to Dismiss Count VII is GRANTED; the Motions to dismiss for insufficiency are DENIED; and the Motions for more definite statement are DENIED.

Should the FDIC desire to amend the Verified Complaint in conformity with the discussion herein, the FDIC is directed to file an amended Verified Complaint within fifteen (15) days of the date of this Order.

DONE AND ORDERED.